**A.J. MORRIS and Burk Morris d/b/a Calc–Arenitic, Appellants,**

v.

**STATE of Texas, Appellee.**

**No. 3–93–662–CV.**

Court of Appeals of Texas, Austin.

Dec. 21, 1994.

Rehearing Overruled March 8, 1995.

---

of the Railroad Commission hearing, proposal for decision, or final order. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case occurred nearly a decade ago. In the early 1980s, Burk Morris, then an oil field consultant, now an attorney, created a partnership with his brother A.J. Morris, a physician, to "try to find some oil [and] get rich." The Morrises drilled three unsuccessful wells in Archer County. In 1985 they abandoned these wells, leaving them unplugged. In 1987 the Railroad Commission commenced an enforcement action against the Morrises. Notice of a public hearing to determine plugging responsibility was sent by the Railroad Commission to the addresses the Morrises had previously provided the agency when they registered to become oil and gas operators. The Morrises failed to appear at this hearing. A proposal for decision was drafted and mailed to the Morrises at the same addresses. A final order was subsequently issued by the Commission and again mailed to the Morrises. The case was then referred to the Attorney General for enforcement.

Suit was originally filed in 1988 and tried in 1989; the Morrises did not appear, and a default judgment was rendered. Following an unsuccessful collateral attack in bankruptcy court, the Morrises appealed the state-court judgment. However, some of the trial exhibits disappeared from the record and the Texarkana Court of Appeals reversed the judgment and remanded the cause for a new trial to develop a complete record.[1] The case was retried in July 1993. This time the Morrises appeared. The essence of their defense was that although they may have received actual notice of the initial Railroad Commission hearing, they did not have the required ten-day statutory notice.[2] *See* Ad-

R.B. Morris, Archer City, Michael "Tate" Barkley, Arlington, for appellants.

Dan Morales, Atty. Gen., Joe Foy, Jr., Asst. Atty. Gen., Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

A.J. Morris and his brother Burk Morris, appellants, appeal from a final judgment in an enforcement suit brought by the State of Texas, appellee, to recover administrative penalties for failure to comply with a Railroad Commission order to plug certain oil wells. The essence of the Morrises' appeal is that they did not receive appropriate notice

---

1. *Morris v. State of Texas,* No. 6–90–046–CV (Tex. App.—Texarkana June 25, 1991, writ denied) (not designated for publication). The original trial was in the 299th District Court of Travis County and the appeal was to this Court. The appeal was transferred to the Texarkana Court of Appeals by the Texas Supreme Court as a matter

of docket control. Tex.Gov't Code Ann. § 73.001 (West 1988).

2. In Burk Morris's response to the State's first request for admissions, he admitted that he received actual notification of the August 6, 1987,

ministrative Procedure Act, Tex.Gov't Code Ann. § 2001.051 (West 1995) (requiring reasonable notice of not less than ten days in contested cases); 16 Tex.Admin.Code § 1.45(a) (1994) ("The commission shall issue notice not less than 10 days prior to hearings in contested cases or other nonrulemaking proceedings."). Following a bench trial, the court rendered a final judgment assessing $17,000 in administrative penalties against the Morrises.

■ The Morrises now appeal from this final judgment, raising six points of error. Points of error one and two contend that there was no evidence or insufficient evidence that the Morrises received statutory notice of the commission hearing. Points of error four and five claim there was no evidence or insufficient evidence that they received notice of the Commission's final order. Point of error three claims the Commission's final order is void because the proposal for decision was not served on the Morrises. In a final point of error, they reiterate their "no notice" claims and argue violation of due process. Hence, all of these grounds of error hinge on whether the Morrises were given reasonable notice of the hearing, proposal for decision, and final order.[3]

## DISCUSSION

The Railroad Commission has jurisdiction over all persons owning or engaged in drilling or operating oil or gas wells in Texas. Tex.Nat.Res.Code Ann. § 81.051 (West 1993). This responsibility involves regulating more than 250,000 producing oil and gas wells, conducting over 140,000 inspections, and investigating over 3,200 complaints. See 2 Ernest E. Smith & Jacqueline Lang Weaver, Texas Law of Oil and Gas § 8.1(D), at 15

(1994). The Commission's regulatory responsibility extends over the 80,000 unplugged wells in Texas, the vast majority of which are in violation of the well-plugging statutes and rules. See 3 Smith & Weaver, supra, § 14.2(A), at 157 (1994).

Recognizing this staggering regulatory task, the legislature requires all persons, partnerships, or corporations performing operations within the Commission's jurisdiction to immediately file with the Commission an organization report that includes the name and address or post office box of the organization and its officers and directors. Tex. Nat.Res.Code Ann. § 91.142 (West 1993). To implement this statutory requirement, the Commission requires oil and gas operators to submit an organization report with current names and addresses and to refile this report annually. 16 Tex.Admin.Code § 3.1 (1994).[4] The organization report is submitted on a Form P–5. It is well known that all Commission correspondence will be mailed to the mailing address shown on the P–5 form. See Texas Oil and Gas Handbook 14 (1987). Indeed, the instructions on the reverse of the P–5 form specify that all correspondence will be directed to the mailing address provided.

■ At trial, the state introduced a copy of the notice of hearing for the original August 6, 1987, hearing. The certificate of service of this document reflects that on July 8, 1987, the Commission sent the notice to the addresses listed on the Morrises' P–5 by both certified and first-class mail, well in excess of the ten-day requirement. Additional Commission documents reflect that the proposal for decision was "served" on all parties on June 13, 1988, at their P–5 addresses. Felix Dailey, director of field operations at the Commission, testified that the

hearing. At trial, he contended that he received actual notice only eight days before the hearing.

3. In their due process point of error six, the Morrises argue that the Commission failed to render the final order within sixty days of the public hearing as required by statute. Administrative Procedure Act, Tex.Gov't Code Ann. § 2001.143(a) (West 1995). The Morrises neglected to raise this issue in the trial court. Accordingly, they have failed to preserve this alleged error for appellate review. Tex.R.App.P. 52(a).

4. Rule 3.1 has been amended since the mid-1980s; however, at all relevant times the Commission required the submission of the organization report and annual refiling. The current Commission rule specifically states that any notice requirement may be met by mailing the item to the organization's address shown on the most recently filed organization report. 16 Tex.Admin.Code § 3.1(a)(7). Notices that are sent by first-class mail to the listed address and which are not returned are presumed received. Id.

proposal for decision was mailed, but not by certified mail. Finally, Commission documents included records that the final order was also sent to the P–5 addresses. Dailey confirmed that this was also done by regular mail rather than certified mail. The Morrises testified at trial that they never received any of these documents.

■ Based upon this review of the evidence, we conclude that there is both factually and legally sufficient evidence for the trial court to find that the Morrises received statutory notice of the initial hearing, the proposal for decision, and the final order. The Commission accomplished this by mailing the documents to the addresses provided by the Morrises to the Commission on their P–5 form. The only issue that remains is whether the Commission's use of this method of notice comports with established principles of due process.

■ Due process requires only that the method of notice be reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action. *Peralta v. Heights Medical Ctr., Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 898–99, 99 L.Ed.2d 75 (1988); *Walker v. Brodhead,* 828 S.W.2d 278, 280 (Tex.App.—Austin 1992, writ denied). Given the volume of correspondence the Commission is required to disseminate to the thousands of oil and gas operators in the state, it is not unreasonable for the Commission to provide these notices through the mail to the addresses the operators are required by statute to provide the Commission. The Commission should be able to reasonably rely on these addresses.

■ This situation is analogous to the legitimate reliance by the Secretary of State on addresses provided to the State under the Texas Business Corporation Act described in *Tankard–Smith, Inc., Gen. Contractors v. Thursby,* 663 S.W.2d 473, 475–76 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The appellant in *Tankard–Smith* alleged that a default judgment was void because it had not received a citation the Secretary of State sent to an incorrect address. The court of appeals rejected this point of error on the grounds that Tankard–Smith had the duty to

provide the Secretary of State with an address and notification of any change. The fact that Tankard–Smith did not receive notice was not the fault of the State, but resulted from "appellant's failure to comply with the provisions of the Business Corporation Act and notify the Secretary of State of its change of address." *Tankard–Smith,* 663 S.W.2d at 476. We hold the Railroad Commission is likewise entitled to rely on the statutorily required addresses provided to it by regulated operators. Mailing required notices to these addresses is consistent with due process because it is a method of notice reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action.

## CONCLUSION

Since there is both legally and factually sufficient evidence that the Commission mailed the notice of hearing, proposal for decision, and final order to the addresses the Morrises had provided the Commission, and that such a procedure is consistent with due process, we overrule the Morrises' points of error. The trial-court judgment is affirmed.