# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00699-CV

**John L. Pierce, II, Appellant**

**v.**

**Texas Racing Commission, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. GN301939, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Appellant John L. Pierce, II appeals from a district court judgment that upheld an order by appellee, the Texas Racing Commission, imposing penalties after a racehorse owned by Pierce tested positive for a prohibited drug. In two issues, Pierce complains that the Commission's order prejudiced his substantial rights and violated his constitutional rights. Within these two issues, Pierce presents five specific complaints related to the order: that the Commission erred by (1) modifying conclusion of law 11 from what was recommended by the Administrative Law Judge; (2) punishing Pierce, the owner, more harshly than the trainer was punished; (3) failing to notify Pierce of or make Pierce a party to the initial stewards' hearing; (4) improperly shifting the burden of proof to Pierce at the State Office of Administrative Hearings; and because (5) certain provisions of the Commission's rules are unconstitutional. We will affirm.

**BACKGROUND**

After Kristy's Gold Star, a thoroughbred filly owned by Pierce, placed second in a race at Lone Star Park on June 8, 2002, urine and blood samples were taken. The urine sample tested positive for ipratropium, a Class 3 prohibited drug. The subsequent split-sample test confirmed the positive finding. *See* 16 Tex. Admin. Code Ann. §§ 319.361-.362 (2006) (setting forth rules for horse drug testing).[1]

The racing stewards notified Richard Duhon, the trainer of Kristy's Gold Star, about the positive test and the upcoming stewards' hearing on the matter. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.07(b) (West Supp. 2006) ("Texas Racing Act") (contemplating stewards' hearing as initial step in administrative process for horse-racing violation). Duhon then informed Pierce of the positive test result and the hearing. The presiding steward also spoke to Pierce about these matters prior to the hearing. Duhon attended the August 21, 2002 stewards' hearing, but Pierce did not. On August 23, the stewards issued a formal ruling ("Stewards' Ruling Retama Park 1355"), which assessed a $500 fine against the trainer,[2] suspended the trainer's license for 15 days, and stated that "Kristy's Gold Star is disqualified, declared unplaced, and the purse is ordered redistributed."[3]

---

[1] Because the relevant portions of the Texas Administrative Code, the Texas Racing Act, and the Texas Government Code have not changed substantively during the pendency of this case, for convenience, we will refer to the current code provisions throughout.

[2] The trainer was also fined $250 for unrelated violations, making his total fine $750.

[3] The purse for Kristy's Gold Star's second-place finish was $28,408.

Pierce appealed the portions of the ruling that unplaced the horse and redistributed the purse.[4] *See id*. § 3.08 (West Supp. 2006). This appeal was conducted by an Administrative Law Judge (ALJ) at the State Office of Administrative Hearings (SOAH). On January 27, 2003, the ALJ issued her Proposal for Decision (PFD), in which she agreed that the Commission's rules had been violated but recommended that Pierce's penalty be decreased "based on convincing evidence that the veterinarian administered the ipratropium for a legitimate medical purpose and in a manner that did not affect the race." Thus, in conclusion of law 11, the ALJ determined that "the Commission should order that Kristy's Gold Star be placed second and the purse distributed accordingly."

The Commission Staff then appealed the PFD to the Commission. The Commission considered this appeal at its February 4, 2003 open meeting. Both Pierce and the Staff appeared and presented arguments. The commissioners voted at the hearing to modify the PFD by deleting findings of fact 15-18 and by altering conclusion of law 11 to uphold the initial stewards' ruling in full. Yet, following the hearing, the Commission determined that only conclusion of law 11 should be modified without any change to the ALJ's fact-findings.

Findings of fact 15-18 state that Kristy's Gold Star's performance was not affected by the ipratropium, which had been administered 25 hours prior to the race, because the withdrawal time for ipratropium is 24 hours, ipratropium is clinically effective for only six hours, and ipratropium has no effect on a horse's performance outside of that time. At the hearing, it was suggested that findings of fact 15-18 be deleted because, given the Commission's "zero-tolerance"

---

[4] Pierce, an attorney licensed in the State of Texas, has represented himself *pro se* throughout the administrative proceedings and on appeal.

3

drug policy, it is irrelevant whether the drug actually affected the horse's performance. The Commission later decided to maintain these fact-findings because they are not inconsistent with its ultimate conclusion.

Thus, the commissioners were mailed a proposed final order that modified only conclusion of law 11 and kept findings of fact 15-18 intact. The commissioners approved this order by their returned signatures in March 2003. The Commission then issued its final order, which stated that, by a "unanimous vote of the members of the Texas Racing Commission present at the meeting, the Commission adopted the Proposal for Decision with modifications as explained below. . . . Conclusion of Law No. 11 is modified to read as follows: '11. Based on the above Findings of Fact and Conclusions of Law, the Retama Board of Stewards' Ruling 1355 is upheld in full.'" After receiving a copy of the Commission's final order, Pierce filed a motion for rehearing, which was overruled by operation of law.

Pierce then appealed to the district court. On October 22, the district court issued its final judgment stating that the "Commission's decision should be affirmed." Pierce now appeals from that judgment, complaining that his substantial rights were prejudiced and his constitutional rights were violated based on the Commission's (1) modification of conclusion of law 11, (2) unequal punishment of Pierce and the trainer, (3) failure to provide Pierce written notice of or to make Pierce a party to the initial stewards' hearing, (4) shifting of the burden to Pierce at the SOAH hearing, and (5) unconstitutional rules. We will consider each of these complaints in turn.

4

# ANALYSIS

## Standard of Review

We review the Texas Racing Commission's order for substantial evidence. Tex. Gov't Code Ann. § 2001.174 (West 2000); 16 Tex. Admin. Code § 307.39 (2006); *see also Bandera Downs, Inc. v. Alvarez*, 824 S.W.2d 319, 322 (Tex. App.—San Antonio 1992, no writ). Under this standard, we presume that the Commission's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden of proving otherwise rests on the appellant. *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.). The Commission's order may be reversed only if a party's substantial rights have been prejudiced because the administrative decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's authority, (3) were made through unlawful procedure, (4) are affected by another error of law, (5) are not reasonably supported by substantial evidence when considering the reliable and probative evidence in the record as a whole, or (6) are arbitrary or capricious or characterized by an abuse of discretion. Tex. Gov't Code Ann. § 2001.174. The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record to support the agency's action. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *see also Keeton v. Texas Racing Comm'n*, No. 03-03-00049-CV, 2003 Tex. App. LEXIS 6925, at *12 (Tex. App.—Austin Aug. 14, 2003, no pet.) (mem. op.). We may not substitute our judgment for that of the agency on questions committed to agency discretion. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 197 (Tex. 2003).

**Modification of Conclusion of Law 11**

The crux of Pierce's appeal is based on the Commission's decision to reject the ALJ's penalty recommendation and, instead, uphold the stewards' initial ruling, which punished Pierce by disqualifying Kristy's Gold Star and redistributing the purse. Pierce prefers the outcome recommended by the ALJ in conclusion of law 11—that Kristy's Gold Star remain in second place, allowing Pierce to collect the purse—and asserts that the Commission's decision to modify conclusion of law 11 was arbitrary and capricious, characterized by an abuse of discretion, made through unlawful procedure, affected by other error of law, in violation of the Commission's statutory authority, and not supported by substantial evidence.

Without question, when a PFD is appealed to the Commission, the Commission may reject what the ALJ has proposed. As Pierce recognizes in his brief, "[t]he ALJ only makes a recommendation to the Commission for it to accept or reject." The Commission is expressly authorized to modify or vacate the PFD. By rule, the Commission shall consider a PFD at an open meeting during which "the Commission may . . . decline to adopt the proposal for decision, in whole or in part." 16 Tex. Admin. Code § 307.36 (2006). Furthermore, Section 2001.058(e) of the government code provides that

> A state agency may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the agency determines: (1) *that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies* provided under Subsection (c),[5] *or prior administrative decisions*. . . . The

---

[5] Subsection (c) states that "[a] state agency shall provide the administrative law judge with a written statement of applicable rules or policies." Tex. Gov't Code Ann. § 2001.058(c) (West

6

> *agency shall state in writing the specific reason and legal basis for a change made under this subsection.*

Tex. Gov't Code Ann. § 2001.058(e) (West 2000) (emphasis added).  The Commission complied with section 2001.058(e) by expressly setting forth in its final order the reasons and legal basis for its modification.  The essence of the Commission's explanation was that the ALJ had failed to properly apply or interpret applicable law, agency rules, and written policies because her recommendation was inconsistent with the Commission's precedent regarding the enforcement policy and guidelines, whereas the penalty recommended by the stewards was appropriate under the applicable rules and guidelines and was consistent with the manner in which the Commission has handled other Class 3 violations.

   The legislature has delegated broad authority to the Commission to "regulate and supervise every race meeting in this state involving wagering on the result of greyhound or horse racing" for the purpose of providing "strict regulation of horse racing and greyhound racing and the control of pari-mutuel wagering in connection with that racing."  Tex. Rev. Civ. Stat. Ann. art. 179e, §§ 1.02, 3.02(a) (West Supp. 2006).  More specifically, the legislature has stated that "[a]ll persons and things relating to the operation of those meetings are subject to regulation and supervision by the commission. The commission shall adopt rules for conducting greyhound or horse racing in this state involving wagering and shall adopt other rules to administer [the Texas Racing Act]." *Id.* §§ 3.02(a), 3.021.  Furthermore, the legislature has authorized the Commission to impose penalties on

---

2000).  Here, copies of the applicable rules and policies were provided to the ALJ and admitted into evidence.

7

violators of the Act and to adopt rules for the imposition of such penalties. *See id.* § 15.03(a) ("If the commission determines that a person regulated under this Act has violated this Act or a rule or order adopted under this Act in a manner that constitutes a ground for a disciplinary action under this Act, the commission may assess an administrative penalty against that person as provided by this section."); *see also id.* §§ 3.07(b) ("The commission shall make rules specifying the authority and the duties of each official, including the power of stewards or judges to impose penalties for unethical practices or violations of racing rules."), 3.16(a) ("The commission shall adopt rules prohibiting a person from unlawfully influencing or affecting the outcome of a race, including rules relating to the use of a prohibited device or prohibited substance at a racetrack or training facility."). The Commission has adopted such rules. *See* 16 Tex. Admin. Code §§ 303.1; 303.2(e) (2006). Thus, based on the legislature's express grant of authority and the Commission's rules adopted in accordance with it, the Commission has discretion over what penalty is appropriate in a contested case.

The Commission has an established drug policy of "zero tolerance." Section 319.3(a) states that, "[e]xcept as otherwise provided by [the narrow exceptions in] this section, a horse . . . participating in a race may not carry in its body a prohibited drug, chemical, or other substance." *Id*. § 319.3(a) (2006). "Prohibited drugs" are defined as "any stimulants, depressants, tranquilizers, local anesthetics, drugs, other drug metabolites which could affect the health or performance of a race animal, *however minimal*." *Id*. § 319.1(b) (2006) (emphasis added). Ipratropium is expressly listed as a Class 3 prohibited drug in the "TxRC Equine Medication Classification and Penalty

8

Guidelines."[6] If a horse tests positive for a prohibited drug either before or after the race, it "is *prima facie evidence* that the prohibited drug . . . was administered to the animal and was carried in the body of the animal while participating in a race." *Id*. § 319.3(f) (2006).

The rules further provide that

> On a finding by the stewards or racing judges that a test specimen from a race animal that participated in a race contains a prohibited drug, . . . the stewards or racing judges may: (1) *disqualify the animal and order the purse redistributed*; . . . and (3) impose penalties authorized by Chapter 307 . . . on: (A) the animal's trainer or kennel owner; (B) any other person responsible for the care and custody of the animal.

*Id*. § 319.304 (2006) (emphasis added). The guidelines set forth "penalty recommendations" for the five classes of violations, stating that the recommendations "should be followed in all cases in the absence of persuasive evidence of mitigating circumstances justifying a lesser penalty or aggravating circumstances justifying an enhanced penalty." The penalty recommended for a Class 3 violation is "60 days-6 months suspension and up to $1,500 fine *and loss of purse*." (Emphasis added.)

John Ferrara, the presiding steward, testified at the SOAH hearing that, for any Class 1, 2, or 3 violation, "it's routine" for the penalty to include "loss of purse." Also, Mike Burleson, the Commission's deputy director, testified that the Commission consistently enforces "loss of purse" as part of the penalty for a Class 3 violation. Burleson explained that, of the 38 Class 3 violations in the last decade, the purse was redistributed in every case but one. The only reason the

---

[6] The administrative rules contemplate that the Commission will enact such guidelines. *See* 16 Tex. Admin. Code §§ 303.8(e), 319.304(b) (2006). Although not included in the code, the guidelines are readily available to all racing participants. The guidelines set forth five classes of prohibited drugs and the recommended penalties that should attach to each class, with Class 1 being the most severe.

9

purse was not redistributed in that one case was because it was unclear whether the particular drug had actually been classified as a Class 3 drug at the time. Burleson also testified that the Commission has maintained a zero-tolerance drug policy ever since Governor Clements mandated to the Commission that Texas's racing industry should be "squeaky clean."

The record, therefore, demonstrates that the Commission did not exceed its authority nor abuse its discretion by concluding that the ALJ had failed to "properly apply or interpret applicable law, agency rules, written policies . . . or prior administrative decisions" when she recommended in conclusion of law 11 that Kristy's Gold Star remain in second place and Pierce be allowed to keep the purse. *See* Tex. Gov't Code Ann. § 2001.058(e)(1). The ALJ's penalty recommendation was based on her findings that the ipratropium administered to Kristy's Gold Star was medically warranted and did not affect the horse's performance in the race. Yet, nothing in the Commission's rules requires proof that the drug actually enhanced performance. Rather, the established policy is one of zero-tolerance, where any positive test of a prohibited drug equals prima facie evidence of a violation. *See Keeton*, 2003 Tex. App. LEXIS 6925, at *17-18 (under zero-tolerance policy, prima facie case of violation is established by any presence of prohibited drug in horse's system). Here, the Staff established a prima facie case that Kristy's Gold Star raced with a prohibited drug in her system, and Pierce offered no evidence to rebut it. He concedes, in fact, that Kristy's Gold Star tested positive after the race for ipratropium, a Class 3 prohibited substance.[7]

---

[7] Alternatively, the Commission argues that it was fully authorized to reject the ALJ's version of conclusion of law 11 because the ALJ had no authority to recommend a penalty. *See Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 781 (Tex. App.—Austin 2005, no pet.) ("We agree with the Board that it is not required to give presumptively binding effect to an ALJ's recommendations regarding sanctions in the same manner as other findings of fact or conclusions

Furthermore, the Commission's modification of conclusion of law 11 to penalize Pierce by disqualifying Kristy's Gold Star and redistributing the purse was within the bounds of its authority, not arbitrary or capricious, and not characterized by an abuse of discretion. The "loss of purse" penalty is expressly authorized by the statute and the Commission's rules, and the Commission's guidelines recommend that it be part of the penalty for Class 3 violations. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, §§ 3.07(b), 3.16(a). 15.03(a); 16 Tex. Admin. Code § 319.304; *see also Keeton*, 2003 Tex. App. LEXIS 6925, at *4-5 (affirming Commission's order that disqualified horse and redistributed first-place purse upon finding of Class 4 violation). Also, Steward Ferrara and Director Burleson testified that loss of purse is a routinely imposed penalty for Class 3 violations; it was imposed in 37 of the 38 Class 3 cases during the last decade. Thus, there was substantial evidence to support the Commission's modification of conclusion of law 11.

Also, there is an important policy reason for the Commission to consistently impose "loss of purse" as a penalty in order to achieve its goal of deterrence—if racing participants believed the only penalty for a drug violation would be a fine, they would likely incur that risk in exchange for the possibility of winning a large purse with a drug-enhanced horse. Policy considerations such as this are the reason why the Commission is granted discretion over what penalties should be imposed for racing violations. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 1.02, 15.03(a); 16 Tex. Admin. Code §§ 303.1, .2; *see also Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*,

---

of law."). We need not decide, however, whether the ALJ had authority to recommend a penalty in a racing commission case because, regardless of whether the ALJ's conclusion of law was authorized, the Commission was statutorily authorized to modify or reject it. *See* Tex. Gov't Code Ann. § 2001.058(e).

662 S.W.2d 953, 956 (Tex. 1984) ("The propriety of a particular disciplinary measure to maintain discipline and good order is a matter of internal administration with which the courts should not interfere in the absence of clear abuse of authority."); *Sears v. Texas State Bd. of Dental Exam'rs*, 759 S.W.2d 748, 751 (Tex. App.—Austin 1988, no writ) ("[T]he choice of penalty is vested in the agency, not in the courts. The agency is charged by law with discretion to fix the penalty when it determines that the statute has been violated.").

Finally, in modifying conclusion of law 11, the Commission complied with section 2001.058(e) by "stat[ing] in writing the specific reason and legal basis for" the change. *See* Tex. Gov't Code Ann. § 2001.058(e); *see also Granek*, 172 S.W.3d at 781 (Board authorized to reject ALJ's recommended sanction and replace it with modified sanction based on Board's provision of "specific reason and legal basis" in compliance with section 2001.058(e)). Specifically, the Commission's final order set forth three paragraphs under the heading, "Reason for Modification," explaining that loss of purse is the appropriate remedy under the guidelines for a Class 3 violation, that a consistent precedent must be enforced, and that, unlike the ALJ, the stewards are expressly authorized to determine the penalty for a racing violation. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.08 (regarding stewards' authority); 16 Tex. Admin. Code §§ 307.61, 313.22 (2006) (same).

Pierce relies on *Flores v. Employees Retirement System of Texas* to support his claim that the Commission's modification was an abuse of discretion. 74 S.W.3d 532, 553 (Tex. App.—Austin 2002, pet. denied). *Flores*, however, is factually distinct from the instant case because (1) in *Flores*, the Board immediately ruled to reverse various parts of the PFD without any deliberation, *see id.* at 539, whereas the Commission discussed its options before ruling and,

12

ultimately, changed only one conclusion of law; (2) here, unlike in *Flores*, the Commission's modified conclusion was supported by the evidence, tracked the penalty recommendation contained in the written guidelines and enforced in similar cases, and was consistent with the well-established policy of zero-tolerance, s*ee id.* at 541-42, 548; and (3) here, unlike in *Flores*, the Commission's written explanation for the modification was comprehensive and supported by the evidence, *see id.* at 542-45.

In connection with his complaint about the Commission's modification of conclusion of law 11, Pierce also raises three sub-complaints: that the Commission's modification was unlawful because (1) it violated his constitutional rights of due process and equal protection by denying him the right to an independent trier-of-fact, (2) the Commission failed to review the administrative record prior to voting to modify the PFD, and (3) the Commission failed to conduct a second hearing prior to signing a modified order different than the one voted on at the hearing. We disagree.

First, it is undisputed that Pierce was provided a full opportunity to present his case to the ALJ who, by statute, is a neutral administrative magistrate. *See* Tex. Gov't Code Ann. § 2001.058(a)-(d) (West 2000), § 2003.021(a) (West Supp. 2006); *Texas Dep't of Pub. Safety v. Rolfe*, 986 S.W.2d 823, 826 (Tex. App.—Austin 1999, no pet.). Also, as discussed above, the Commission is statutorily authorized to modify or reject the ALJ's recommendations. *See* Tex. Gov't Code Ann. § 2001.058(e); 16 Tex. Admin. Code § 307.36. Just because the Commission modifies or rejects an ALJ's finding or conclusion does not mean the ALJ was not an independent trier-of-fact. Thus, Pierce's constitutional rights were not violated by the Commission modifying conclusion of law 11 from what was recommended by the ALJ.

13

Second, the Commission is not required to review the administrative record prior to modifying a PFD. Rather, government code section 2001.062 authorizes the majority of the Commission's Board to decide the matter without reading the record or hearing testimony, so long as the PFD has been issued to all parties and each affected party has had the opportunity to respond. *See* Tex. Gov't Code Ann. § 2001.062 (West 2000). Here, section 2001.062 was satisfied because the commissioners and all interested parties had copies of the PFD, and Pierce and the Staff each presented written and oral argument to the Commission. Also, the transcript from the Commission hearing conclusively establishes that the commissioners listened to, responded to, and considered the arguments presented. Just because the commissioners ultimately disagreed with Pierce does not mean that they violated his rights.

Finally, it was not necessary that the Commission conduct an additional hearing in order to adopt a final order that modified only conclusion of law 11, rather than modifying conclusion of law 11 and deleting findings of fact 15-18, as originally voted on at the open meeting. "Until an agency issues an effective final order, the agency retains jurisdiction over the matter and can withdraw previous orders and issue new ones." *Star Houston, Inc. v. Texas Dep't of Transp.*, 957 S.W.2d 102, 106 (Tex. App.—Austin 1997, pet. denied) (order requiring "subsequent agency approval is not final"); *Lone Star Greyhound Park v. Texas Racing Comm'n*, 863 S.W.2d 742, 745-46 (Tex. App.—Austin 1993, writ denied) (same). In any event, the final order issued by the Commission is consistent with what it deliberated about and voted on at the open meeting. If anything, the issued final order is actually more favorable to Pierce than what was originally voted on because it maintains the findings that the ipratropium did not affect the horse's performance.

14

While these findings do not erase the violation, they are at least helpful to Pierce's reputation in the racing industry. Thus, Pierce cannot show that he was harmed by the Commission's decision to adopt a final order that modified conclusion of law 11 and maintained fact-findings 15-18.

In sum, the Commission's decision to modify the ALJ's conclusion of law 11 and uphold the penalty initially imposed by the stewards was supported by substantial evidence and was not arbitrary and capricious, characterized by an abuse of discretion, made through unlawful procedure, affected by other error of law, or made in violation of the Commission's statutory authority. *See* Tex. Gov't Code Ann. § 2001.174. Further, this action did not violate Pierce's constitutional rights.

**Failure to Punish Owner and Trainer Consistently**

Next, Pierce complains about the unequal penalties imposed on himself (the owner) and Duhon (the trainer)—Duhon was punished with a $500 fine and 15-day suspension, while Pierce's $28,408 purse was redistributed. Pierce claims that this "gross disparity and inconsistency of the treatment" is arbitrary and capricious, characterized by an abuse of discretion, and in violation of his constitutional right of equal protection.

As support, Pierce cites the Commission's guidelines, which state that "consistency" of punishment is a goal and that "mitigating factors" can be considered when determining a punishment. Here, the evidence showed that the ipratropium was medically warranted to treat the horse's bronchitis and did not affect the horse's performance because it was given to Kristy's Gold Star more than 25 hours prior to the race, has a standard withdrawal time of 24 hours, and is typically effective for only 6 hours. Also, the treating veterinarian (not Pierce) administered the drug and,

pursuant to the Texas Racing Act, the trainer (not Pierce) is considered "to be the absolute ensurer that no prohibited substance has been administered to the animal" and is "responsible for ensuring that no prohibited substance is administered to the animal." Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.16(h) (West Supp. 2006).

Despite this mitigating evidence, however, the penalty imposed on Pierce by the Commission did not constitute an abuse of discretion and was not arbitrary and capricious. As discussed in the preceding section, the Commission followed its guidelines, as well as a decade of precedent, in imposing loss of purse on the owner when a Class 3 violation has been established. Thus, the penalty imposed on Pierce followed the Commission's guidelines of consistently punishing violators: just like the owners in 37 of the decade's last 38 cases involving a Class 3 violation, Pierce lost the purse.

The real issue, then, is whether Pierce's constitutional rights were violated by punishing the trainer more leniently than the owner based on the same violation.[8] "Claims regarding deprivation of constitutional rights present questions of law, and we accordingly review them de novo." *Granek*, 172 S.W.3d at 771-72. The Fourteenth Amendment provides, in relevant part, that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV; *see also* Tex. Const. art. I, § 3; *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257 & n.4 (Tex. 2002) (evaluation of equal protection claim is same under federal and state

---

[8] Other than simply reciting that the disparity in treatment "violated his constitutional right to equal protection," Pierce fails to cite or discuss a single statute, case, or even a constitutional provision to support his equal protection claim. Despite the waiver on appeal presented by Pierce's failure to properly brief the issue, *see* Tex. R. App. P. 38.1(h), we will discuss it in the interests of justice.

16

constitutions). However, "when no suspect class or fundamental right is involved, . . . the government is permitted to give classes disparate treatment, notwithstanding the constitutional guarantee [of equal protection], as long as it has a rational basis for doing so." *Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 784 (Tex. 2005); *see also* Tex. Const. art. I, § 3a (recognizing "sex, race, color, creed, [and] national origin" as protected classes); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 524 (Tex. 1995) (explaining rational basis test as "rationally related to a legitimate state purpose"). "The Equal Protection Clause does not, of course, require that the State never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." *Avery v. Midland County*, 390 U.S. 474, 484 (1968).

Here, the distinction in treatment between the horse-owner and horse-trainer did not involve a suspect class worthy of heightened protection. *See* Tex. Const. art. I, § 3a. Thus, the Commission's action was constitutionally permitted so long as the decision was rationally related to a legitimate state interest. *See Garcia*, 893 S.W.2d at 524. Ultimately, the win or loss of a purse will affect the owner, not the trainer—this is just the nature of the game. The Commission explained the need to impose loss of purse as a penalty in order to achieve its goal of deterring drug violations in the racing industry. This is a legitimate state purpose because it promotes health in the animals as well as fairness of the racing field. Because the Commission had a rational basis to impose the loss of purse penalty as well as the trainer's $500 fine and 15-day suspension, its decision did not violate Pierce's constitutional rights. *See Neeley*, 176 S.W.3d at 784.[9]

---

[9] In any event, we note that, although both parties refer to the loss of purse as a penalty "imposed on Pierce," it is actually a collateral consequence of the violation that is felt by Pierce, as the owner, unlike the fine and suspension, which were penalties directly "imposed on" the trainer.

**Failure to Provide Notice to Pierce or Make him a Party to the Stewards' Hearing**

Pierce also complains that his due process rights were violated based on the stewards' failure to provide him notice of or make him a party to the initial hearing. We review this constitutional issue de novo. *Granek*, 172 S.W.3d at 771-72.

The Due Process Clause states that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see* Tex. Const. art. 1, § 19; *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (procedural due process protections provided under Texas Constitution mirror those provided under federal Constitution). In determining whether a procedural due process violation has occurred, we apply a two-part analysis: (1) whether the claimant has a property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Than*, 901 S.W.2d at 929; *see also Trostle v. Combs*, 104 S.W.3d 206, 213 (Tex. App.—Austin 2003, no pet.) ("The strictures of due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions.").

Here, the parties contest whether Pierce had a property interest in the purse. Pierce, of course, claims that he did, while the Commission responds that he did not because, pursuant to the administrative code, there is no right to the purse until the Executive Secretary has cleared the race for payment, *see* 16 Tex. Admin. Code §§ 307.67(e), 319.301(c) (2006), and because the ability for an owner to participate in racing is not a right but, instead, a highly regulated privilege. We agree with the Commission that the rules make clear that a racing participant has no property right in the purse pending the resolution of an alleged violation. *See id.* §§ 307.67(e), 319.301(c). In any event,

18

the second prong of the inquiry—whether Pierce was deprived of any process that was due to him at this initial stage in the proceedings—is dispositive of Pierce's claim.

The Texas Racing Act states that "[b]efore imposing a penalty . . . the stewards and judges shall conduct a hearing that is consistent with constitutional due process." Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.07(b).[10] "Due process is flexible and calls only for those procedural protections demanded by the particular circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Id.* at 348 (citations omitted). Yet, "due process requires only that the method of notice be reasonably calculated, under the circumstances, to apprise the interested parties of the pendency of the action." *Morris v. State*, 894 S.W.2d 22, 25 (Tex. App.—Austin 1994, writ dism'd w.o.j.). Thus, evidence that a party received actual notice of a hearing may defeat the party's claims on appeal for due process violations. *See Northrup v. Southwestern Bell Tel. Co.*, 72 S.W.3d 16, 21 (Tex. App.—Corpus Christi 2002, pet. denied) (no due process violation in face of actual notice); *Montgomery Ward & Co. v. Denton County Appraisal Dist.*, 13 S.W.3d 828, 831 (Tex. App.—Fort Worth 2000, pet. denied) (same); *Dispensa v. University State Bank*, 987 S.W.2d 923, 928 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (same); *see also Shrieve v. Texas Parks & Wildlife Dep't*, No. 03-04-00640-CV, 2005 Tex. App. LEXIS 3406, at *13 n.6 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op.) (same).

---

[10] Section 3.07(b) further states that a "hearing conducted by a steward or judge under this subsection is not subject to Chapter 2001, Government Code." Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.07(b) (West Supp. 2006). Thus, for the initial stewards' hearing, the notice requirements of section 2001.051 did not apply. *See* Tex. Gov't Code Ann. § 2001.051 (West 2000) (requiring reasonable notice of not less than ten days in contested cases).

19

Here, the record conclusively establishes that Pierce was provided actual notice of the hearing on multiple occasions, was aware that the hearing could result in penalties related to his horse's positive drug test, and was invited to attend the hearing by the presiding steward. First, the stewards' investigative report, which was admitted as evidence before the ALJ, states that

> On 6/20/2002, [Investigator] Hallam attempted to contact the owner of this horse, John L. Pierce, II at [phone number]. This is Mr. Pierce's office, and a message was left on his answering machine. On 6/21/2002, Inv. Hallam contacted Mr. Pierce by telephone and notified him of this positive test. Mr. Pierce stated that he had already been notified by [the trainer].

Pierce confirmed this by stating on the record that

> When I *first heard about [the stewards'] hearing from my trainer*, he gave me the wrong date; but later *I did find out the actual date*; *and I talked to Mr. Ferrara [the presiding steward] a few days before* to find out the day it was going to be—it was going to be heard, the morning. I did have a horse—well, I had a horse running the next day and *I planned to attend*. However, the morning [of the hearing] . . . I was having a root canal that morning, so I wasn't there.

(Emphasis added.) Additionally, the presiding steward, Ferrara, testified that

> I know [Pierce had actual notice] because, either two or three days [after written notice was sent to the trainer], [Pierce] called me and we had a lengthy conversation. . . . *I realized he was an attorney; and I advised him during that 30-minute conversation that he could represent [the trainer] if he wished, he could be a witness for Mr. Duhon, or he could be an observer as an owner at the hearing.* . . . [Pierce] said he wasn't sure [if he would attend the hearing]. . . . [A]pproximately two or three days later [we had] a shorter conversation. And *he told me he had a root canal scheduled for that morning and he planned to go ahead and have the root canal done.* . . . [H]e did not [ask that the hearing be postponed]." But, had he requested a continuance, "[w]e definitely would have [granted it].

20

(Emphasis added.) Pierce confirmed that the basic content of Ferrara's testimony was correct but responded that he was unaware a postponement was possible.

Thus, the record demonstrates that Pierce was informed of the date, time, place, and subject matter of the hearing, and that Pierce was specifically invited to attend by Presiding Steward Ferrara, yet chose to not attend because he preferred to not reschedule his dental appointment. Also, despite his legal training, Pierce did not seek a continuance. Thereafter, prior to the issuance of the final order, Pierce fully participated in the administrative proceedings at SOAH and before the Commission. Because Pierce had actual notice of the hearing and an opportunity to appear and defend his interests, his due process rights were not violated by the stewards' failure to provide him written notice of or formally make him a party to the initial hearing. *See Mathews*, 424 U.S. at 334, 348; *see also Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 146 (Tex. 1951) ("The requirement of due process of law is met if the notice prescribed affords the party a fair opportunity to appear and defend his interests.").

**Shifting Burden of Proof to Pierce at the SOAH Hearing**

Pierce asserts several related complaints regarding the burden of proof that was placed on him at the SOAH hearing. First, he complains that the burden of proof was improperly "shifted" to him at the SOAH hearing; Pierce claims that, because he had not participated at the stewards' hearing, the Staff should have retained the burden of proof at SOAH. Second, he claims that section 307.67(c) of the administrative code, which places the burden of proof on the appellant, violates his due process rights. *See* 16 Tex. Admin. Code § 307.67(c) (2006). Third, Pierce complains that section 307.67(c) should be considered void because it is inconsistent with section 3.08 of the Texas

21

Racing Act. *See* Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.08(a). Finally, Pierce asserts that the standard of proof imposed at SOAH was unconstitutional because it should have been "by a preponderance of the evidence" rather than "by clear evidence." We will address each of these complaints in turn.

First, Pierce waived his right to complain about carrying the burden of proof at the SOAH hearing because he acquiesced to this at the start of the hearing. Specifically, Pierce told the ALJ, "I've got the burden to rebut that [prima facie case established by the positive test]; but there's no clear and convincing. . . . But I think the burden of proof is just to rebut the prima facie evidence." When the ALJ responded "So you're saying it's like a preponderance of the evidence standard . . . and [Staff] is saying it's a clearly in error standard, Pierce answered, "Yes, ma'am." Although Pierce contested what the standard of proof required, he never, either orally or in writing, brought to the ALJ's attention his complaint that the burden of proof had been improperly placed on him. *See* Tex. R. App. P. 33.1 (generally, to preserve error for appeal, party must timely present issue to lower court with sufficient specificity to make court aware of complaint); *Missouri Pac. R.R. Co. v. Whittenburg & Alston*, 424 S.W.2d 427, 430 (Tex. 1968) (complaints that burden imposed was too great and that trial court had misplaced burden of proof were not preserved for appellate review by failing to object below); *Flameout Design & Fabrication v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 836 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (failure to object that court had improperly shifted burden of proof waived error); *see also Anderson Mill Mun. Util. Dist. v. Robbins*, No. 03-04-00369-CV, 2005 Tex. App. LEXIS 7482, at *27 (Tex. App.—Austin Sept. 8, 2005, no pet.).

In any event, the administrative code unambiguously states that, in an appeal from a stewards' ruling, the appellant carries the burden of proof at SOAH. Specifically, section 307.67(c) provides that a "hearing on an appeal from a ruling by the stewards or racing judges is a contested case and shall be conducted by SOAH . . . [at which] *the appellant has the burden to prove* that the stewards' or racing judges' decision was clearly in error." 16 Tex. Admin. Code § 307.67(c) (emphasis added). Thus, even had Pierce objected to carrying the burden of proof at SOAH, the ALJ would have been correct to overrule the objection and maintain the burden on Pierce.

Although Pierce argues that it violates due process for this statute to apply to appellants who did not participate in the stewards' hearing, we disagree.[11] In administrative proceedings, due process requires that parties be accorded a full and fair hearing on disputed fact issues. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 576 (Tex. App.—Austin 2006, pet. filed). While administrative hearings need not meet judicial standards, they cannot be arbitrary or inherently unfair. *Id*. Here, the statute says nothing about an exception for nonparticipating parties, and in light of the fact that Pierce had actual notice of the stewards' hearing, yet chose not to participate, we find nothing unfair about the ALJ following the statutory mandate that Pierce carry the burden of proof. *See In re D.M.*, 191 S.W.3d 381, 390 (Tex. App.—Austin 2006, pet. denied) (did not violate due process to place burden of proof on parents in child-delinquency case because parents "were afforded the fundamental requirements of due process: they were notified of the disposition hearing and were given an opportunity to be heard in a

_____

[11] Here too, Pierce has failed to cite any authority for his claim that due process requires the burden of proof to remain on the Staff under these facts. Again, in the interests of justice, we address his complaint despite his improper briefing. *See* Tex. R. App. P. 38.1(h).

23

meaningful manner"); *see also Keeton*, 2003 Tex. App. LEXIS 6925, at *21 ("We do not perceive any violation of due process in the [Racing] Commission's rule placing the burden of proof on appellants to show error [in appeal from stewards' ruling]."). Thus, section 307.67(c) was not unconstitutionally applied to Pierce.

We also disagree with Pierce's contention that section 307.67(c) is inconsistent with section 3.08(a) of the Racing Act, which states that "a final decision of the stewards or judges may be appealed to the commission in the manner provided for a contested case under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes)." Tex. Rev. Civ. Stat. Ann. art. 179e, § 3.08(a). According to Pierce, section 3.08(a) mandates that the agency carry the burden of proof on appeal from the stewards' ruling, which would be inconsistent with section 307.67(c)'s requirement that the appellant carry the burden of proof. *See* 16 Tex. Admin. Code § 307.67(c). Pierce, however, reads section 3.08(a) incorrectly. Nothing in section 3.08(a) states that the burden of proof should be placed on the agency. Instead, that section provides that former article 6252-13a shall govern the appellate procedures. Former article 6252-13a, § 19(e) is now government code section 2001.174, providing for a substantial evidence review in which the appellant bears the burden to prove that the findings, inferences, conclusions, and decisions of the administrative agency are not supported by substantial evidence. *See* Tex. Gov't Code Ann. § 2001.174; *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 452 (Tex. 1993) (article 6252-13a, § 19(e), has been recodified as section 2001.174); *Railroad Comm'n. v. Home Transp. Co.*, 654 S.W.2d 432, 434 (Tex. 1983) (same); *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied) ("appealing party bears the

24

burden of showing a lack of substantial evidence"). There is nothing inconsistent between section 307.67(c)'s placement of the burden of proof on the appellant in an appeal from a stewards' ruling and section 3.08(a)'s requirement that such an appeal be conducted under a substantial evidence review, in which the appellant carries the burden of proving error in the agency's action.

Pierce's final complaint regarding his burden of proof at the SOAH hearing is that the standard of proof required should have been a "preponderance of the evidence" rather than "by clear evidence."[12] As noted above, Pierce voiced this complaint to the ALJ and, therefore, preserved error. Nevertheless, the standard of proof in an appeal from a stewards' ruling is designated by statute as a requirement that the appellant demonstrate the stewards' "decision was clearly in error." 16 Tex. Admin. Code § 307.67(c). Thus, the ALJ was correct to impose this standard of proof. Furthermore, we find nothing unconstitutional about requiring this level of proof. *See Mathews*, 424 U.S. at 334; *Keeton*, 2003 Tex. App. LEXIS 6925, at *20-22 (burden of proof set forth in section 307.67(c) does not violate due process).

**Unconstitutionality of the Commission's Rules**

In Pierce's final complaint on appeal, he argues that administrative code sections 319.1 and 319.3 are unconstitutional for three reasons. Specifically, he claims that (1) sections 319.3(a) and (f) are unconstitutional because they create "conclusive mandatory presumptions," *i.e.*, irrebuttable presumptions of guilt that improperly relieve the State of its burden of proof; (2) sections 319.3(a) and (f) are unconstitutionally vague and in irreconcilable conflict with the more specific

---

[12] The ALJ stated in conclusion of law 4 that Pierce's burden was "to show that a finding by the stewards was 'clearly in error.'"

provision of 319.3(e); and (3) section 319.1(b) is unconstitutionally vague and in irreconcilable conflict with section 319.1(a). *See* 16 Tex. Admin. Code §§ 319.1, 319.3. We will address each complaint in turn.

Section 319.3(a) sets forth the Commission's zero-tolerance policy:

> (a) Except as otherwise provided by this section, a horse or greyhound participating in a race may not carry in its body a prohibited drug, chemical, or other substance.

*Id*. § 319.3(a). Section 319.3(f) establishes the Commission's rule that a positive test result for a prohibited drug equals prima facie evidence of a violation:

> (f) A positive finding by a chemist of a prohibited drug, chemical, or other substance in a test specimen of a horse or greyhound collected before or after the running of a race, subject to the rules of the commission relating to split specimens, is prima facie evidence that the prohibited drug, chemical, or other substance was administered to the animal and was carried in the body of the animal while participating in a race.

*Id*. § 319.3(f).

When reviewing the constitutionality of a statute, we begin with a presumption that it is constitutional, and the party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. Tex. Gov't Code Ann. § 311.021(1) (West 2005); *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). Section 319.3(a) does not create any presumptions. Rather, it simply states the rule that a horse may not race with any prohibited drug in its system. Section 319.3(f), on the other hand, allows for a presumption that the rule established in (a) has been violated if there is evidence of a positive drug test. Still, this presumption is rebuttable. The agency is required to produce evidence that the horse tested positive for a prohibited

substance. The alleged violator can rebut this evidence with proof such as spoliation of the evidence. Yet, if there is conclusive evidence that the horse raced with a prohibited drug in its system, as here, then the owner or trainer is subject to punishment for violating the rule. The Constitution does not prohibit statutes from creating rebuttable presumptions such as this one, even if they favor a state agency. *City of San Marcos v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 264, 277 (Tex. App.—Austin 2004, pet. denied); *Tex-Air Helicopters, Inc. v. Galveston County Appraisal Review Bd.*, 76 S.W.3d 575, 588-89 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also Winkle v. Tullos*, 917 S.W.2d 304, 313 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (rebuttable presumption in healthcare liability claim that doctor's acts were not negligent as long as in compliance with statute was constitutional).

The only authority cited by Pierce for the notion that such rules unconstitutionally relieve the Commission of its burden of proof is *Willis v. State*, a criminal case. 790 S.W.2d 307, 309 (Tex. Crim. App. 1990) (in criminal setting, "mandatory presumptions [that favor State] are deemed unconstitutional because they eliminate the State's constitutionally required burden of proving guilt beyond a reasonable doubt"). Not only is the nature of *Willis* distinct from the instant case, but *Willis* also recognizes that, even in a criminal case, not all presumptions are unconstitutional. *Id*. at 311 (presumption that could rationally be drawn from facts passed constitutional muster).

Pierce further asserts that sections 319.3(a) and (f) irreconcilably conflict with section 319.3(e), which provides that

27

(e) Except as otherwise provided by this chapter, a person may not administer or cause to be administered to a horse or greyhound a prohibited drug, chemical, or other substance . . . during the 24-hour period before the post time for the race in which the animal is entered.

16 Tex. Admin. Code § 319.3(e) (2006). According to Pierce, subsections (a) and (f) are more general and should, therefore, be controlled by the more specific subsection (e). Thus, he argues, any decision made by the Commission based on subsections (a) or (f) prejudiced his substantial rights and should be reversed.

It is not necessary, however, to determine whether one of the subsections is controlling over another because all three provisions are harmoniously effective. *See* Tex. Gov't Code Ann. §§ 311.021(2), .025 (West 2005). Subsections (a) and (f) provide that a horse is not permitted to have any amount of a prohibited drug in its system at the time of the race, and a positive post-race drug test will be considered prima facie evidence that this rule has been violated. *See* 16 Tex. Admin. Code § 319.3(a), (f). This is the rule regardless of when the drug was administered or for what purpose it was administered. *Id*. Subsection (e) provides further that no prohibited drug can be administered to the horse within 24 hours of the race, regardless of whether the drug would still be in the horse's system at race time.

Here, it is undisputed that Pierce complied with the 24-hour rule because the ipratropium was administered to Kristy's Gold Star over 25 hours in advance of the race. Nonetheless, it is also undisputed that the drug remained present in the horse's system at race time, resulting in a positive post-race test. A party cannot avoid punishment under subsection (a) simply by complying with subsection (e), nor vice versa: a party could be punished upon evidence that a

28

prohibited drug was administered within 24 hours of the race, regardless of whether the horse tested positive for it at race time. The rules are not inconsistent; rather, they cover distinct violations. Thus, these rules are not unconstitutional, and the Commission's decision to punish Pierce based on his violation of section 319.3(a), as established through un-rebutted prima facie evidence under section 319.3(f), did not prejudice Pierce's substantial rights.

Pierce similarly complains that section 319.1(b)'s definition of "prohibited drug"—any substance that "could affect the health or performance of a race animal, however minimal"—irreconcilably conflicts with the overall purpose stated in 319.1(a)—"to protect the integrity of horse and greyhound racing, to ensure the health of race animals, and to safeguard the interests of the public and the participants in racing through the prohibition and control of all prohibited drugs, chemicals, and other substances." *See id.* § 319.1. According to Pierce, because the stated purpose is to "ensure the health" of the animals, the definition of prohibited drug should be limited to performance-enhancing drugs—meaning that no violation would result if the drug was proven to have a therapeutic or medical purpose.

We see no reason to limit the definition as proposed by Pierce. Drugs that generally have positive health effects on an animal can also have harmful and/or performance-enhancing effects if improperly administered. Thus, it is consistent with the policies of protecting the integrity of racing, ensuring the health of the animals, and safeguarding the public's and participants' interests for the Commission to adhere to a zero-tolerance policy and disallow the existence of all prohibited drugs. Furthermore, by defining which drugs are prohibited, and at what levels (Classes 1-5), the Commission allows for administration of certain drugs that have been deemed acceptable. Notably,

29

the Commission presents an important policy implicated by these rules: if the animal is so sick that it cannot run without the aid of drugs, then it should not be racing at all. This policy supports the Commission's position that all prohibited drugs, regardless of whether they may serve a medical purpose, should be disallowed in order to achieve the purposes set forth in section 319.1(a). Accordingly, these rules are constitutional, and Pierce's substantial rights were not prejudiced by the Commission's determination that he violated the rules by allowing Kristy's Gold Star to race with ipratropium in her system, even if it was administered to treat her bronchitis.

## CONCLUSION

We have concluded that (1) the Commission was authorized to modify the ALJ's conclusion of law 11 and uphold the punishment imposed by the stewards; (2) the Commission was authorized to punish Pierce more harshly than the trainer; (3) there was no error resulting from a lack of written notice about the stewards' hearing because Pierce had actual notice of it, was invited to attend, chose not to attend, and fully participated in the administrative proceedings thereafter; (4) at the SOAH hearing, the burden of proof was correctly placed on Pierce and was imposed at the appropriate standard of proof; and (5) there is nothing unconstitutional about the Commission's rules cited by Pierce.

Therefore, Pierce has failed to establish any prejudice to his substantial rights or any violation of his constitutional rights. Accordingly, we overrule his two issues and affirm the judgment of the district court, upholding in full the Commission's final order.

30

_____

                                        W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   October 17, 2006