# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00390-CV

**Charles P. Akin, D.D.S., Appellant**

**v.**

**State Board of Dental Examiners, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-12-001867, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Charles P. Akin, D.D.S., appeals from the district court's judgment affirming the decision of the Board of Dental Examiners to deny Akin a dental license following a contested case hearing. Akin contends that the Board modified the findings of fact and conclusions of law of the administrative law judge (ALJ) in violation of the Administrative Procedure Act (APA) and that the Board's final order is not supported by substantial evidence. Because we conclude that the Board's modifications to the ALJ's findings of fact and conclusions of law were in compliance with the APA and that there is substantial evidence to support the Board's order, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURE BACKGROUND

Akin was previously licensed in 1962 and practiced dentistry for nearly 40 years. In the early 1990s, he invested in a company that made Medicare products, including lumbar sacral

supports for wheelchair patients. In 1997, Akin was indicted for conspiracy, mail fraud, money laundering, and Medicare false claims. He was tried and convicted in 1999 and sentenced to 87 months in prison. The conviction was upheld on appeal, and he served five years followed by three years probation. In 2001, the Board revoked his dental license. Following his release from prison, Akin did some "administrative" work for another dentist, Dr. Herron, and in Akin's daughter's denture shop. While he was working at Dr. Herron's office, he accepted and deposited at least two checks given by patients to Dr. Herron that were made out to Akin. During his time at his daughter's denture shop, he wore a name tag that read "Charles P. Akin, Office Manager, D.D.S. Retired." In 2010, Akin applied for a dental license. The Board denied the application for three reasons: (1) the length of time Akin had been out of practice, (2) his poor eyesight, and (3) potential illegal acts he had committed in the previous 12 months that affect the practice of dentistry. Akin subsequently took 100 hours of continuing education and corrected his vision.

In 2011, he again applied for a license. The Board again denied the application, concluding that by wearing the name tag, Akin represented to the public that he was a licensed dentist, in violation of section 251.003 of the Dental Practice Act (the Act). *See* Tex. Occ. Code § 251.003(a)(1)(A) & (B) (person practices dentistry who represents to public he is a dentist or uses the title "Doctor," "Dr.", or "D.D.S." or another title that directly or indirectly represents that he is able to perform listed dental practices). The Board also concluded that by wearing the name tag and by accepting and depositing the checks he committed dishonest or illegal practices and violated a law relating to the practice of dentistry within 12 months prior to his application. *See id.* § 263.001 (Grounds for Refusal to Issue License) (4) (commits dishonest or illegal practice related to dentistry),

2

(6) (is found to have violated law relating to dentistry within 12 months prior to application); *see also id.* § 256.102(a) (Board may allow dental license holder to place license on retired status and license holder must apply for retired status on form prescribed by board before expiration of license).

Akin requested a hearing at the State Office of Administrative Hearings. *See generally* Tex. Gov't Code §§ 2001.051–.147; Tex. Occ. Code § 263.003. At the hearing, Akin testified that while he was working at his daughter's denture shop doing administrative tasks and cleaning up, an investigator came to the shop and observed the name tag. The evidence showed that the front desk person ordered the name tag for him, and Akin testified that he thought it represented to the public what he believed to be true and told those who asked—that he had a D.D.S. degree and was retired—so he wore it. Akin also testified that about two years prior he had been working at the office of Dr. Herron, who had bought Akin's denture practice from the dentist to whom Akin had sold it, doing the same sort of general cleaning up and repairing equipment. Dr. Herron's practice was doing poorly, and Dr. Herron eventually filed for bankruptcy. Akin testified that he had wanted to lease the unoccupied portion of the building in which Dr. Herron's practice was located and arrange for his daughter to take over Dr. Herron's practice. Akin referred to this as "transitioning" the practice, but he stated that he was unable to secure the lease and the "transition" never occurred.

The evidence showed that two complaints were filed involving Akin during his time at Dr. Herron's office, only one of which was admitted into evidence. In the complaint admitted into evidence, the complainant stated that she had taken her father to be fitted for dentures that he never received. The office staff told her to leave blank the "pay to the order of" line on the check, in the amount of $2,495, and they would stamp it. When the check was subsequently presented for

3

payment, the complainant learned it had been made out to "Charles Akin." She stated that she did not know who Akin was. The other complaint, about which the Board questioned Akin, stated that "Dr. Akin" had taken impressions but she had never received her dentures. In this case, the check was for $295 and was made out to "Dr. Akin." Akin testified that he did not take impressions or see any patients. Akin also testified that Dr. Herron's office staff was worried about getting paid, that Dr. Herron's accounts were "garnished" in the bankruptcy, and that his name mistakenly ended up on two or three checks without his knowledge during the "transitioning." He explained that he endorsed and deposited them in his personal savings account that he "like[d] to call an escrow account" and the money was still there. He stated that at the time he accepted the checks, he did not know the patients were unhappy or had not received the services paid for. He also testified that he had asked the Board what to do with the funds but received no reply, so he still had the money. He stated that he had advised his attorney and Dr. Herron's bankruptcy attorney that he had deposited the checks into his account.

Following the hearing, the ALJ issued a proposal for decision recommending that the Board grant the application. The Board modified four findings of fact and three conclusions of law, deleted one conclusion of law and reclassified one as a recommendation, and denied the application. The Board denied Akin's motion for rehearing, and Akin appealed. *See* Tex. Occ. Code § 263.009. After hearing the matter, the district court upheld the Board's order. This appeal followed.

**STANDARD OF REVIEW**

We review a state agency's order under the "substantial evidence" standard of review under section 2001.174. *See* Tex. Gov't Code § 2001.174; *Froemming v. Texas State Bd. of Dental*

4

*Exam'rs*, 380 S.W.3d 787, 790 (Tex. App.—Austin 2012, no pet.). Under this standard, we presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden of proving otherwise rests on the appellant. *Froemming*, 380 S.W.3d at 791 ; *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied). The agency's order may be reversed only if a party's substantial rights have been prejudiced because the administrative decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's authority, (3) were made through unlawful procedure, (4) are affected by another error of law, (5) are not reasonably supported by substantial evidence when considering the reliable and probative evidence in the record as a whole, or (6) are arbitrary or capricious or characterized by an abuse of discretion. Tex. Gov't Code § 2001.174; *Froemming*, 380 S.W.3d at 790. The test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record to support the agency's action. *Froemming*, 380 S.W.3d at 790; *Pierce*, 212 S.W.3d at 751. We may not substitute our judgment for that of the agency on questions committed to agency discretion. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 197 (Tex. 2004); *Froemming*, 380 S.W.3d at 790.

Akin's issues also turn on questions of statutory construction, which is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's*

*Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). If the statutory language is ambiguous, we may defer to an administrative agency's construction of its own statutory authority. *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 475 (Tex. App.—Austin 2012, pet. denied). "[A]n agency's interpretation of a statute it is charged with enforcing is entitled to 'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language." *Texas Citizens*, 336 S.W.3d at 624. When statutory laguage is subject to multiple interpretations, we must uphold an enforcing agency's construction if it is reasonable and in harmony with the statute. *Id.* at 629 (observing that "governmental agencies have a 'unique understanding' of the statutes they administer") (quoting *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)). We construe administrative rules in the same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). If the language is ambiguous, we defer to an agency's interpretation of its own rules unless it is plainly erroneous or contradicts the text of the rule or underlying statute. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Texas Bd. of Chiropractic Exam'rs*, 375 S.W.3d at 475.

**DISCUSSION**

**Modification of Findings of Fact and Conclusions of Law**

Akin challenges the Board's modifications to the ALJ's proposal for decision. Specifically, he argues that the Board changed the ALJ's finding of fact and conclusions of law in violation of the APA. Section 2001.058(e) of the APA provides:

(e) A state agency may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the agency determines:

   (1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions;

   (2) that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or

   (3) that a technical error in a finding of fact should be changed.

   The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov't Code § 2001.058(e); *see Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 515 (Tex. App.—Austin 2007, no pet.). Akin complains that the Board's modifications to findings of fact numbers 18, 19, and 24 and conclusions of law numbers 6 through 9 do not meet the requirements of section 2001.058(e).[1] We address each modification in turn.

*Finding of Fact Number 18*

   In finding of fact number 18, the ALJ found that Akin did not represent to the public that he was able to perform the dental activities listed in section 251.003(a)(1)(A) & (B) by wearing the name tag that said "D.D.S. Retired."[2] The Board modified the finding to state that Akin wore

---

[1] Akin also lists finding of fact number 21 and conclusion of law number 5 in a section of his brief entitled "Points of Error," but he does not offer any argument or cite to any authority or to the record and has therefore waived any argument as to whether the Board's modification of finding of fact number 21 and conclusion of law number 5 complied with section 2001.058(e). *See* Tex. R. App. P. 38.1(i).

[2] The dental activities listed in section 251.003(a)(1) are:

a name tag stating he was a "D.D.S. Retired" when he was not licensed. In explaining the change,

the Board stated that the ALJ did not properly apply or interpret applicable law and agency rules.

Citing section 251.003(a)(1), *see* Tex. Occ. Code § 251.003(a)(1)(A), (B), and Rule 101(7)(a)(1),

*see* 22 Tex. Admin. Code § 101.7(a)(1) (State Board of Dental Examiners,[3] Retired License Status)

(license holder may apply to have license placed on retired status), the Board explained that because

Akin's license was revoked, he had no license to retire, as required by agency rules. The Board

stated that because Akin wore a name tag with the words "D.D.S. Retired," he therefore held himself

out as a "dentist," a statutorily protected title. The Board also noted that Akin received checks from

patients made out to "Dr. Akin."[4] We conclude that the Board provided a specific reason and legal

basis for its modification and met the requirements of section 2001.058(e). *See* Tex. Gov't Code

§ 2001.058(e); *Froemming*, 380 S.W.3d at 793 (concluding that board's explanation of how ALJ

failed to apply or interpret applicable law, rules, and policies met requirements of Rule 107.51(a)(1),

which adopts requirements of section 2001.058(e)); *Pierce*, 212 S.W.3d at 751 (holding agency met

requirements of section 2001.058(e) where it provided comprehensive explanation).

---

(A) diagnose, treat, or remove stains or concretions from human teeth; or

(B) provide surgical and adjunctive treatment for a disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, oral cavity, alveolar process, gums, jaws, or directly related and adjacent masticatory structures.

Tex. Occ. Code § 251.003(a)(1)(A), (B).

[3] All cites to the Texas Administrative Code are to rules issued by the Texas Board of Dental Examiners.

[4] Although the Board referred to "checks," the record reflects that one check was made out to "Dr. Akin" and another to "Charles Akin."

*Finding of Fact Number 19*

In finding of fact number 19, the ALJ found that Akin was not licensed and was not required to place his license on retired status. The Board revised it to read that Akin's license was revoked and he could not hold himself out as having a "retired" dental license. The Board stated that the ALJ's finding inaccurately stated the law and legal requirements for having a "retired license" and because Akin did not hold a valid license, he could not state that he is a retired dentist. On appeal, the Board contends that it did not elaborate further regarding finding of fact number 19 because the same issues were addressed in its discussion of finding of fact number 18. We conclude that the Board has adequately explained the specific reason and legal basis for the change. Tex. Gov't Code § 2001.058(e); *Froemming*, 380 S.W.3d at 793; *Wood v. Texas Comm'n on Envtl. Quality*, No. 13-13-00189-CV, 2015 Tex. App. LEXIS 2139, at *24–32 (Tex. App.—Corpus Christi Mar. 5, 2015, no pet.) (mem. op.) (upholding multiple changes to findings of fact where agency explained reasons, including that ALJ misapplied agency policies).

*Finding of Fact Number 24*

In finding of fact number 24, the ALJ found that there was no evidence Akin was practicing dentistry or was paid for practicing dentistry in the summer of 2009. The Board revised the finding to say that during that time period, Akin held himself out as a "DDS Retired" and accepted checks from dental patients. The Board stated that finding of fact number 24 did not properly apply or interpret applicable law and agency rules. The Board explained that under the law a person who calls himself "D.D.S." or "Doctor" is practicing dentistry and that the purpose of the law is to protect the public from being deceived. It further stated as a reason for its change that Akin

9

held himself out as "Doctor" and "D.D.S.," worked in a dental practice, and received checks written to "Dr. Akin" from patients who never received the dental services or reimbursement.[5] The essence of the Board's explanation is that the ALJ failed to properly apply or interpret the law concerning the practice of dentistry and retirement from the practice of dentistry to the facts in evidence. Therefore, we conclude that the Board provided a specific reason and legal basis for its action and met the requirements of section 2001.058(e). *See* Tex. Gov't Code § 2001.058(e); *Froemming*, 380 S.W.3d at 793 (where essence of board's explanation was that ALJ failed to properly apply or interpret applicable law, agency rules, and written policies regarding sanctions, board met requirements of Rule 107.51(a)(1), which adopts requirements of section 2001.058(e)); *cf. Levy v. Texas State Bd. of Med. Exam'rs*, 966 S.W.2d 813, 816 (Tex. App.—Austin 1998, no pet.) (where board stated generically multiple reasons for changes made but did not specify reasons for each individual change, agency's order was insufficient under section 2001.058(e)).

*Conclusion of Law Number 6*

In conclusion of law number 6, the ALJ concluded that Akin did not violate the law within 12 months prior to his application. The Board modified this conclusion to state that Akin did violate the law within 12 months prior to his application. The Board explained that conclusion of law number 6 did not accurately reflect the applicable law and rules providing that Akin's wearing a name tag indicating that he was a retired dentist when he was neither retired nor a licensed dentist violated the law and was dishonest. Having found that the Board properly modified the findings of

---

[5] As previously noted, although the Board referred to "checks," the record reflects that one check was made out to "Dr. Akin" and another to "Charles Akin."

fact, we conclude that the Board provided a specific reason and legal basis sufficient to meet the requirements of section 2001.058(e). *See* Tex. Gov't Code § 2001.058(e); *Froemming*, 380 S.W.3d at 793; *Wood*, 2015 Tex. App. LEXIS 2139, at *24–32.

*Conclusion of Law Number 7*

In conclusion of law number 7, the ALJ concluded that Akin did not commit a dishonest or illegal act. The Board modified this conclusion to state that Akin did commit a dishonest or illegal act that was deceptive to dental patients. The Board stated that the findings reflect that Akin held himself out as a dentist and patients wrote Akin checks either for performing administrative functions or because they thought he was a dentist and that either way he was dishonest or practicing dentistry illegally. Having found that the Board properly modified the findings of fact, we conclude that the Board's explanation was sufficient under section 2001.058(e). *See* Tex. Gov't Code § 2001.058(e); *Froemming*, 380 S.W.3d at 793; *Smith v. Montemayor*, No. 03-02-00466-CV, 2003 Tex. App. LEXIS 5099, at *1, 24–27 (Tex. App.—Austin June 19, 2003, no pet.) (mem. op.) (commissioner's explanation that ALJ's conclusions failed to properly apply applicable statute and rule met requirements of section 2001.058(e)).

*Conclusion of Law Number 8*

In conclusion of law number 8, the ALJ concluded that Akin is fit to perform the duties and responsibilities of a dentist. The Board deleted conclusion of law number 8, stating that it was not based in fact or on applicable law. It explained that the evidence showed that Akin had been unable or unwilling to follow the law while not licensed, indicating he would likely not be able

to do so if granted a license, and that his dishonest, deceptive, and illegal behavior should not be rewarded with a license. We conclude that the Board's explanation for deleting conclusion of law number 8 satisfies the requirements of section 2001.058(e) that it state a specific reason and legal basis for its changes. *See* Tex. Gov't Code § 2001.058(e); *Texas State Bd. of Dental Exam'rs v. Brown*, 281 S.W.3d 692, 699–700 (Tex. App.—Corpus Christi 2009, pet. denied) (upholding board's deletion of ALJ's conclusion of law based on ALJ's improper application of law); *Sanchez*, 229 S.W.3d at 516 (upholding board's deletion of conclusion of law as unnecessary and noting deletion was within board's discretion).

### Conclusion of Law Number 9

In conclusion of law number 9, the ALJ concluded that Akin's application should be granted. The Board deleted conclusion of law number 9 and reclassified it as a recommendation. Citing authority from this Court and others, and noting its duty to protect the public, the Board explained that the final decision rests with it and that the mere labeling of a recommendation by the ALJ as a conclusion of law does not change its effect. Relying on section 263.001(4) & (6) of the Occupations Code, the Board further stated that it has the authority to refuse a license to an applicant who commits a dishonest or illegal practice related to the practice of dentistry or is found to have violated the law within 12 months prior to the application. *See* Tex. Occ. Code § 263.001(4), (6). The mere labeling of a recommendation as to the ultimate outcome as a conclusion of law does not determine its binding effect. *See Froemming*, 380 S.W.3d at 792; *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 781 (Tex. App.—Austin 2005, no pet.). Nonetheless, "we have . . . analyzed whether the requirements of section 2001.058(e) of the APA have been met." *See*

12

*Froemming*, 380 S.W.3d at 792; *accord Granek*, 172 S.W.3d at 781 (noting that disciplinary recommendation implicated section 2001.058(e) despite that recommendation does not have presumptively binding effect). Here, we conclude that the Board sufficiently stated a specific reason and legal basis for deleting conclusion of law number 9 and reclassifying it as a recommendation so as to meet the requirements of section 2001.0058(e). We overrule Akin's issues as to the Board's compliance with section 2001.058(e).[6]

**Substantial Evidence**

Akin also argues that under the "substantial evidence" standard of review the record does not support the Board's decision not to issue Akin a dental license. While Akin acknowledges the wearing of the name tag and the receipt of the checks, he argues that neither is sufficient to justify

---

[6] Akin also challenges the Board's modifications as "wholesale changes" not allowed by section 2001.058(e). He contends that subsection (1), concerning the ALJ's application or interpretation of the law, applies only to conclusions of law and that subsection (3), making a technical error a basis for modification, applies only to findings of fact. Consequently, he argues, the Board's changes to findings of fact based on the ALJ's misapplication or misinterpretation of the law rather than on technical errors was improper. However, the plain language of section 2001.058(e) contains no such limitation in the application of subsections (1) and (3). *See* Tex. Gov't Code § 2001.058(e); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). Nor has this Court inferred such a limitation in applying section 2001.058(e). *See, e.g.*, *Madden v. State Bd. for Educator Certification*, No. 03-11-00584-CV, 2014 Tex. App. LEXIS 5444, at *17–20 (Tex. App.—Austin May 22, 2014, pet. filed) (mem. op.) (affirming trial court's judgment upholding board changes to both findings of fact and conclusions of law on ground ALJ's findings and conclusions were inconsistent with board policies); *Smith v. Montemayor*, No. 03-02-00466-CV, 2003 Tex. App. LEXIS 5099, at *1, 24–27 (Tex. App.—Austin June 19, 2003, no pet.) (mem. op.) (affirming trial court's judgment upholding commissioner's modifications of both findings of fact and conclusions of law based on ALJ's failure to properly apply and interpret rule and holding that "[a]n agency enjoys complete discretion in modifying an ALJ's findings and conclusions when those findings and conclusions reflect a lack of understanding or misapplication of the existing laws, rules, or policies"). We do not find Akin's arguments on this point persuasive.

13

denial of the license, i.e., that the Board misconstrued the statute. The Act sets out specific grounds for refusal to issue a license, including if the applicant commits a dishonest or illegal practice in or connected to dentistry or is found to have violated a law of this state relating to dentistry within 12 months prior to filing the application. *See* Tex. Occ. Code § 263.001(4), (6). "Under the Dental Practice Act, the legislature has delegated broad authority to the Board to adopt and enforce rules necessary to ensure compliance with state laws relating to the practice of dentistry and to protect public health and safety." *Froemming*, 380 S.W.3d at 793. However, the Board may not reinstate or reissue a convicted felon's dental license "unless an express determination is made that the reinstatement or reissuance of the license or registration is in the best interests of the public and the person whose license or registration was suspended or revoked." 22 Tex. Admin. Code § 101.8(d) (Persons with Criminal Backgrounds).

*Wearing the Name Tag*

Akin first argues that there is not substantial evidence to support the Board's claim that Akin's wearing a name tag that read "Charles Akin, D.D.S. Retired" constituted the practice of dentistry under section 251.003 of the Act. He contends that because the name tag stated that Akin was retired, it did not convey to the public that he was able to perform the dental activities listed in section 251.003. *See* Tex. Occ. Code § 251.003(a)(1)(A), (B). This argument hinges on Akin's contention that a retired dentist cannot perform any of the acts set out in section 251.003. However, a retired dentist may perform those acts in certain circumstances. *See id.* § 256.102(f) (dentist on retired status may perform an activity regulated by the Act if practice consists only of "voluntary charity care"); 22 Tex. Admin. Code § 101.7(c) (same and defining "voluntary charity care"). Akin

14

argues that there was no evidence that he was performing voluntary charity care. However, the question is not whether he was actually performing dental work, charity or otherwise; the question is whether by wearing the name tag, he practiced dentistry *by representing that he could* perform acts of dentistry. *See* Tex. Occ. Code § 251.003(a)(1). Moreover, as section 256.102 makes clear, a dentist's retirement is regulated by the Act, which requires the dentist to apply for retired status on a form prescribed by the Board before expiration of his license. *See id.* § 256.102(a). Although Akin's expert witness opined that he did not believe Akin held himself out as a dentist by wearing the name tag because "D.D.S." is a "degree . . . given by a university," he acknowledged that to retire, a dentist has to "comply with the Board's code" and must be a "holder of a valid or current Texas dental license" to "apply to the Board to have the . . . license placed on retired status." Akin's expert witness also testified that Akin was not the holder of a valid Texas dental license and did not apply to the Board for retired status. The evidence amounts to more than a mere scintilla, and reasonable minds could have concluded that Akin held himself out as a dentist by wearing the name tag. *See Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988) (stating that agency decision will be upheld if reasonable minds could have reached result). We therefore conclude that there was substantial evidence to support the Board's conclusion that by wearing the name tag Akin held himself out as a dentist and thus violated the law and engaged in dishonesty. *See* Tex. Occ. Code §§ 251.003(a)(1), 263.001(4), (6); *Froemming*, 380 S.W.3d at 790–91, 794; *Pierce*, 212 S.W.3d at 751.

*Accepting the Checks*

Akin also argues that there is not substantial evidence to support the Board's claim that his receipt of the checks from Dr. Herron's practice constitutes the illegal practice of dentistry or some other illegal act. Akin focuses on the check admitted into evidence that was addressed to "Charles Akin," not "Dr. Akin," and argues that because there was no evidence who told the complainant to leave the check payee blank or who put Dr. Akin's name on the check, the check cannot serve as a basis for the claim that Dr. Akin was practicing dentistry. Akin also contends that the Board has not cited any law that Dr. Akin allegedly broke. However, regardless of how the checks were made out or who wrote in Akin's name, it is undisputed that Akin accepted, endorsed, and deposited at least two checks from dental patients for dental services they did not receive.[7] This is more than a mere scintilla of evidence, and reasonable minds could have concluded that by accepting and depositing the checks Akin committed a dishonest or illegal act. *See* Tex. Occ. Code § 263.001(4); *Sizemore*, 759 S.W.2d at 116. Therefore, we conclude that the Board's conclusion that in accepting and depositing the checks Akin committed a "dishonest and/or illegal practice in or connected to dentistry that was deceptive to dental patients" under section 263.001 of the Act is supported under the "substantial evidence" standard of review. *See* Tex. Occ. Code § 263.001(4), (6); *Froemming*, 380 S.W.3d at 790, 794; *Pierce*, 212 S.W.3d at 751.

Furthermore, the Board made no express finding that reissuance of Akin's license is in the best interest of the public. *See* 22 Tex. Admin. Code § 101.8(d) (Board may not reinstate or

_____

[7] Further, once Akin learned that the patients did not receive the services for which they paid, he did not return the money, an act that is not dependent on instruction from the Board, despite Akin's claims to that effect.

16

reissue convicted felon's license unless express determination is made that reinstatement or reissuance is in best interests of public and person whose license was suspended or revoked). Rather, the Board found that Akin had been unable or unwilling to abide by the laws that govern dentistry when he was not licensed, he was unlikely to do so if licensed, and his dishonest, deceptive, and illegal behavior should not be rewarded by the granting of a dental license. We overrule Akin's issues as to substantial evidence.

## CONCLUSION

Having overruled Akin's issues, we affirm the trial court's judgment.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   April 9, 2015