# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00349-CV

**Erasmo Garcia, Appellant**

**v.**

**The Texas Real Estate Commission; and Douglas E. Oldmixon in his Official Capacity as Administrator of the Texas Real Estate Commission, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-12-000887, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Erasmo Garcia appeals from the district court's judgment affirming the decision of the Texas Real Estate Commission following a contested case hearing to assess a monetary penalty against Garcia and suspend his real estate license. Garcia contends that the Commission violated the Administrative Procedure Act (APA) by modifying the conclusion of law of the administrative law judge (ALJ) that only a monetary penalty should be imposed and that the Commission's final order is not supported by substantial evidence. Because we conclude that the Commission's modification to the ALJ's conclusion of law failed to comply with the APA, but that there is substantial evidence to support the Commission's imposition of a monetary penalty, we affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

Erasmo Garcia was a licensed real estate salesperson sponsored by James Charles Valentino, II, a licensed real estate broker, between April 9, 2007, and October 9, 2008. *See* Tex. Occ. Code §§ 1101.002(1), (7) (defining broker and salesperson), .351(c) (providing that licensed salesperson may not act as broker unless associated with broker and acting for broker). Garcia and Valentino conducted real estate brokerage activities under the business name Realty Geeks. In 2007, Garcia represented Jose Moreno and Elizabeth Zamora in a real estate transaction involving the sale of a residence from Moreno to Zamora. In July 2008, Moreno and Zamora filed complaints against Garcia with the Commission concerning his representation of them in the 2007 transaction. After investigation, the Commission determined that Garcia violated provisions of the Texas Occupations Code and Commission rules by failing to disclose that he was acting as an intermediary, accepting compensation from both sides of the transaction without disclosing such compensation to both parties, inserting his license number in documents instead of his sponsoring broker's license number, and taking other inappropriate actions in his dealings with both the buyer and the seller in the transaction.

The Commission requested a hearing before the State Office of Administrative Hearings and sought an administrative penalty of $30,500 and suspension of Garcia's license for two years. *See generally* Tex. Gov't Code §§ 2001.051–.147 (setting out procedures for contested case hearing under APA); Tex. Occ. Code § 1101.710 (providing that proceeding under Chapter 1101, governing real estate brokers and salespersons, is subject to APA); *see also* Tex. Occ. Code §§ 1101.652, .656, .701 (providing Commission authority to suspend or revoke license or

2

impose administrative penalty for specified conduct). A hearing was held before an ALJ in June 2011. The ALJ received documentary evidence and heard the testimony of three witnesses: Bruce Wooley, Chief Investigator with the Commission's Standard and Enforcement Services Division (Enforcement Division); Sharon Harris, an attorney and the Standards and ADR Coordinator with the Enforcement Division; and Garcia. The ALJ issued a proposal for decision (PFD) that contained findings of fact and conclusions of law, including a finding that a $17,000 administrative penalty would reflect the seriousness of the violations and a conclusion that, based on the findings and conclusions, assessment of a $17,000 penalty would be appropriate. The Commission filed exceptions to the PFD requesting that the ALJ impose a two-year suspension of Garcia's license in addition to the monetary penalty and make two nonsubstantive typographical corrections. The ALJ modified the PFD to correct the typographical errors but declined to recommend any substantive changes to the PFD. The Commission issued its final order adopting the ALJ's findings of fact and conclusions of law and adding the imposition of a two-year suspension of Garcia's license. Garcia appealed to the district court, which upheld the Commission's final order. *See* Tex. Gov't Code §§ 2001.171–.178 (providing for judicial review of final order); Tex. Occ. Code § 1101.710. Garcia then filed this appeal.

## STANDARD OF REVIEW

We review a state agency's decision under the "substantial evidence" standard. *See* Tex. Gov't Code § 2001.174. This standard requires that we reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (A) in violation of a constitutional or statutory

provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.* § 2001.174(2). In reviewing fact-based determinations under this standard, we may not substitute our judgment for that of the agency but rather must determine whether, considering the reliable and probative evidence in the record as a whole, some reasonable basis exists in the record for the agency's action. *See id.* § 2001.174(2)(E); *Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 105 n.60 (Tex. 2010). "Thus, the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas Health Facilities Comm'n v. Charter Med.-Dal., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the appellant to demonstrate otherwise. *See Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 791 (Tex. App.—Austin 2012, no pet.); *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied). We must affirm the agency's findings if they are supported by more than a scintilla of evidence. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam).

Garcia's issues also require us to construe applicable statutes and rules. Statutory construction is a question of law that we review de novo. *See Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary

4

concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). We construe administrative rules in the same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

## DISCUSSION

### Modification of Conclusion of Law Number 11

In his first issue, Garcia argues that the Commission's modification to the ALJ's conclusion of law concerning the assessment of penalties does not meet the requirements of section 2001.058(e) of the APA.[1] Section 2001.058(e) of the APA provides:

> (e) A state agency may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the agency determines:
>
> (1) that the administrative law judge did not properly apply or interpret applicable law, agency rules, written policies provided under Subsection (c), or prior administrative decisions;

---

[1] Although the ALJ's suggested sanction is stated as a conclusion of law, the imposition of sanctions is the application of possible sanctions to the specific facts, and as such, is a mixed finding of fact/conclusion of law or an "ultimate finding of fact." *See Charter Med.-Dal., Inc. v. Texas Health Facilities Comm'n*, 656 S.W.2d 928, 934 (Tex. App.—Austin 1983), *rev'd on other grounds*, 665 S.W.2d 446 (Tex. 1984) (concluding that ultimate fact findings are "broad postulates" that are "phrased in factual language" but are "easily seen as conclusions relative to legal standards"). Because this distinction does not affect our analysis, we adopt the ALJ's use of the term "conclusion of law."

5

(2) that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or

(3) that a technical error in a finding of fact should be changed.

The agency shall state in writing the specific reason and legal basis for a change made under this subsection.

Tex. Gov't Code § 2001.058(e); *see Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 515 (Tex. App.—Austin 2007, no pet.). In conclusion of law number 11, the ALJ concluded that "[b]ased on the above Findings of Fact and Conclusions of Law, assessment of $17,000 penalty against [Garcia] would be appropriate." In its final order, the Commission modified conclusion of law number 11 to read as follows: "Based on the above Findings of Fact and Conclusions of Law, assessment of $17,000 penalty against [Garcia] and a two year suspension of [Garcia's] Texas real estate salesperson license would be appropriate." In a single sentence, the Commission explained the modification: "The Commission is exercising its authority to change the disciplinary sanctions because of the number and serious nature of the violations found." Garcia contends that the Commission failed to meet the requirement of section 2001.058(e) that it state the specific reason and legal basis for modifying the ALJ's conclusion of law that only a monetary penalty should be imposed. We agree.

Although the Commission's addition of a suspension was an exercise of its discretion to adjust the sanction, as opposed to a modification of a finding of fact or conclusion of law, the Commission nonetheless was required to comply with section 2001.058(e) by providing a "specific reason and legal basis" for rejection of an ALJ's proposed findings and conclusions. *See Froemming*, 380 S.W.3d at 792; *Pierce*, 212 S.W.3d at 755; *Granek v. Texas State Bd. of Med.*

6

*Exam'rs*, 172 S.W.3d 761, 781 (Tex. App.—Austin 2005, no pet.). One reason the Commission stated for the modification is the seriousness of the violations found. However, that explanation is contradicted by one of its findings of fact. The Commission adopted all of the ALJ's findings of fact, which include finding number 44 that "[a]ssessment of a $17,000 administrative penalty *would reflect the seriousness of the violation* and deter future violations." Thus, the Commission found that an administrative penalty alone would address the serious nature of Garcia's conduct. Consequently, the Commission's findings do not support its explanation that additional discipline of a two-year suspension was needed in order to reflect the seriousness of the violations. *See Granek*, 172 S.W.3d at 782 (holding that despite offering lengthy explanation for change in penalty, board's explanation violated section 2001.058(e) where explanation was not supported by Board's findings and several findings were contradictory to explanation); *see also Froemming*, 380 S.W.3d at 794 (discussing *Granek*).

Further, the Commission offered no discussion of Garcia's conduct and its serious nature and no explanation of why or how the recommended sanction did not address the seriousness of the violations. *See Froemming*, 380 S.W.3d at 792–93 (concluding that board's explanation met requirements of section 2001.058(e) where it included discussion of aggravating circumstances it considered in determining sanction); *Texas State Bd. of Dental Exam'rs v. Brown*, 281 S.W.3d 692, 699–700 (Tex. App.—Corpus Christi 2009, pet. denied) (holding that board complied with section 2001.058(e) where it identified as support for action specific findings of fact and conclusions of law and explained why additional disciplinary action was warranted); *Pierce*, 212 S.W.3d at 755 (determining that board complied with section 2001.058(e) where its order included three

7

paragraphs explaining specific reasons for modification of penalty); *Grotti v. Texas State Bd. of Med. Exam'rs*, No. 03-04-00612-CV, 2005 Tex. App. LEXIS 8279, at *9, *27, *30 (Tex. App.—Austin Oct. 6, 2005, no pet.) (mem. op.) (concluding that board properly modified PFD where its order included explanation of why recommended sanction did not address severity of conduct, was too lenient to be effective, and was insufficient to protect public). The second reason the Commission stated for modifying the sanction was the number of violations found. As with its first reason, however, the Commission failed to explain why or how the recommended sanction failed to address the number of violations. *See Froemming*, 380 S.W.3d at 792–93; *Brown*, 281 S.W.3d at 699–700; *Pierce*, 212 S.W.3d at 755; *Grotti*, 2005 Tex. App. LEXIS 8279, at *9, *30.

Similarly, the Commission failed to explain its statutory authority or articulate any policy, statutory provision, or Commission rule as the legal basis for modifying the sanction assessed. The Commission stated that it was "exercising its authority to change the disciplinary sanctions," but it did not state the "legal basis" for that authority, as required by section 2001.058. *See Froemming*, 380 S.W.3d at 793 (concluding that board's explanation met requirements of section 2001.058(e) where it included explanation that ALJ failed to consider prior actions and violations so that recommended sanction was inconsistent with board's guidelines and rules); *Brown*, 281 S.W.3d at 699–700 (Tex. App.—Corpus Christi 2009, pet. denied) (holding that board complied with section 2001.058(e) where specific findings of fact and conclusions of law identified as support for action cited statutory provisions and board rules supporting disciplinary determination); *Sanchez*, 229 S.W.3d at 515 (stating that agency must "articulate a rational connection between an underlying agency policy and the altered finding of fact or conclusion of

8

law"); *Pierce*, 212 S.W.3d at 755 (determining that board complied with section 2001.058(e) where its order included explanation of its authority under statutes and rules of why modification of penalty was consistent with guidelines and board precedent); *see Grotti*, 2005 Tex. App. LEXIS 8279, at *30 (holding that board complied with section 2001.058(e) where order included explanation of its statutory authority).

Although in its briefing on appeal the Commission cites section 1101.652 of the Occupations Code as a basis for suspension of Garcia's license, *see* Tex. Occ. Code § 1101.652(b) (providing laundry list of actions for which license may be suspended), it made no reference in its final order to that or any other statutory provision, to any Commission policy, or to any other legal basis for adding a two-year suspension based on either the seriousness or the number of violations. Nor did the Commission assert in its final order that the ALJ failed to properly apply or interpret applicable law, agency rules, written policies or that a prior decision should be changed. *See* Tex. Gov't Code § 2001.058(e)(1), (2). We conclude that the Commission's explanation for modifying the ALJ's finding of fact number 11 fails to meet the requirements of section 2001.058(e). *See Froemming*, 380 S.W.3d at 792–93; *Brown*, 281 S.W.3d at 699–700; *Sanchez*, 229 S.W.3d at 515; *Pierce*, 212 S.W.3d at 755; *Granek*, 172 S.W.3d at 782; *Grotti*, 2005 Tex. App. LEXIS 8279, at *9, *30. We sustain Garcia's first issue.

**Challenges to Findings of Fact**

In his second issue, Garcia challenges specific findings of fact. First, he argues that findings of fact numbers 6–11 are immaterial to the agency's determination. Findings numbers 6–11 concern Moreno's prior purchase of the home that was the subject of his transaction with Zamora.

They provide the framework for and include finding number 10— that in the contract for the prior transaction, Garcia used his license number, not that of his broker. Similarly, in finding of fact number 22, the ALJ found that in the transaction between Moreno and Zamora, Garcia again inserted his license number for that of his broker. Findings numbers 10 and 22 show a pattern of behavior and support in part conclusions of law numbers 4 and 5 that Garcia acted negligently and engaged in conduct that is dishonest or in bad faith or that demonstrates untrustworthiness. *See* Tex. Occ. Code § 1101.65(b)(1) (providing that Commission may suspend licence if salesperson acts negligently or incompetently), (2) (providing that Commission may suspend licence if salesperson engages in conduct that is dishonest or in bad faith or demonstrates untrustworthiness). Thus, finding of fact number 10 was not legally irrelevant, and the Commission's decision was not arbitrary or capricious to the extent it was based on it. *See Sanchez*, 229 S.W.3d at 508 n.6.

To the extent findings numbers 6 through 9 and 11, which state additional facts about the prior sale, may be considered irrelevant, the Commission's ultimate conclusions of law were not based on them, and Garcia's substantial rights were therefore not prejudiced. *See* Tex. Gov't Code § 2001.174(2); *General Motors Corp. v. Bray*, 243 S.W.3d 678, 693–94 (Tex. App.—Austin 2007, no pet.) (holding that appellant's substantial rights were not prejudiced by irrelevant finding of fact that was not basis of agency's conclusions of law); *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 766–67 (Tex. App.—Austin 2000, pet. denied) (observing that section 2001.174(2) prevents court from reversing unless appellant's substantial rights have been prejudiced by findings and holding that extraneous findings unnecessary to order did not prejudice rights). Consequently,

we need not reach Garcia's additional argument that finding of fact number 9 is not supported by evidence. *See* Tex. R. App. P. 47.1.

Garcia next argues that finding of fact number 12 is not supported by substantial evidence. Finding number 12 states that Moreno signed a listing agreement with Garcia to sell the home for $125,000. Garcia challenges the listing price, contending that the original price was $132,000, and that by agreement it was reduced to $128,000. However, the listing agreement contained in the record shows a typed listing price of $132,500, with a line drawn through it and a hand-written listing price of what appears to be $125,000. We therefore conclude that finding of fact number 12 is supported by substantial evidence. *See CenterPoint Energy*, 324 S.W.3d at 105 n.60. Moreover, even if the amount stated is incorrect, it had no bearing on the Commission's conclusions of law and did not prejudice Garcia's substantial rights. *See* Tex. Gov't Code § 2001.174(2); *Bray*, 243 S.W.3d at 693–94; *Ford Motor Co.*, 21 S.W.3d at 766–67.

Garcia also challenges finding of fact number 17 on the ground that it is not supported by substantial evidence. Finding number 17 states that the special provision contained in the listing agreement is ambiguous. The special provision states that "[c]lient shall enter into a Buyer Representation Agreement and pay retainer at time of closing," and the parties disagree about to whom "client" refers. Garcia maintains it refers to Moreno and argues that there is no evidence that Moreno did not know he was the "client," that "[c]learly the agreement was for the seller [, i.e., Moreno,] to pay a retainer to [Garcia]," and that the only logical conclusion is that "client" refers to Moreno. Garcia testified that he wrote the special provision, that he uses that provision with buyers who are investors as an incentive for them to continue to buy property through him, and that

11

the Buyer Representation Agreement referred to in the special provision is a new one that Moreno was to sign the next time he purchases property through Garcia.

We agree that one possible reading of the special provision is that "client" refers to Moreno. However, the agreement does not identify or define "client," and Moreno is identified as "Seller" and is referred to as such throughout the agreement. Moreover, the agreement makes no reference to Garcia's approach for working with investor buyers, and, as discussed more fully below, Garcia entered into Buyer Representation Agreements with both Moreno and Zamora, in which they are both referred to as "client." The listing agreement provides that Moreno, as seller, is required to pay Garcia a commission of 5% "or 4% if Garcia is only agent *and see special provisions*." (Emphasis added.) Thus, an alternative reading of the special provision in the context of the entire listing agreement is that Moreno was to pay Garcia, who turned out to be the only agent, a 4% commission if the client, buyer Zamora, signed a Buyer Representation Agreement and paid a retainer. On this record, we conclude that there is substantial evidence to support the finding that the special provision is, on its face, ambiguous. *See CenterPoint Energy*, 324 S.W.3d at 105 n.60.

Garcia next contends that finding of fact number 18 is not material to the agency's determination. Finding number 18 sets out the terms of Garcia's Buyer's Representation Agreement with Zamora, including a $4,000 nonrefundable retainer and a commission of the greater of 4% or $4,000, plus a $275 transaction fee.[2] Garcia argues that the finding is immaterial because, as finding of fact number 37 states, the Commission does not dictate what a salesperson may charge as a

---

[2] Although the retainer is referred to as "nonrefundable," Garcia agreed to refund the retainer at closing after all other fees and commissions were paid.

12

commission. However, finding number 18 merely states the terms of the transaction and does not form the basis of any conclusion of law as to the appropriateness of the amount of Garcia's commission. Rather, finding number 18, along with finding number 15 concerning the commission to be paid by Moreno, establish that Garcia was paid by both parties for his work on the same transaction. Findings of fact numbers 15 and 18 therefore support in part conclusion of law number 6, which states that Garcia received compensation from both the buyer and seller without their consent. *See* Tex. Occ. Code § 1101.652(b)(8) (providing that Commission may suspend license if salesperson receives compensation from more than one party to transaction without full knowledge and consent of all parties). Thus, finding of fact number 18 is relevant to the Commission's conclusions of law.

In his challenges to findings of fact numbers 21 and 38 through 41, which all relate to Garcia's acting as an intermediary, Garcia contends that the findings are not supported by the evidence. Finding 21 states that Zamora did not give Garcia consent to serve as an intermediary. In finding 38, the Commission found that Garcia did not notify Moreno that he was serving as an intermediary in the transaction—as required by the listing agreement. Finding number 39 states that Zamora did not authorize Garcia in writing to serve as an intermediary. Finding number 40 is that Garcia breached his duty of fidelity to Moreno and Zamora by failing to disclose that he was representing both of them in the transaction. Finding 41 states that Garcia breached his duty of fidelity to Zamora by failing to secure her written consent to serve as an intermediary and by putting his interests above hers. Section 1101.559(a) provides that a broker may act as an intermediary between parties only if he obtains written consent from each party and the consent states the source

13

of any expected compensation to the intermediary. *See id.* § 1101.559(a)(1). Harris, the Enforcement Division attorney, testified that only a broker may act as an intermediary, but the broker may authorize a salesperson to act on his behalf. She further testified that a broker or his authorized salesperson must have the written consent of both parties, generally included in the listing agreement and the Buyer Representation Agreement, before an intermediary relationship may be established. Commission rule 535.156 provides that a real estate licensee has a fiduciary duty to his client and requires a license holder to put the client's interest above his own. *See* 22 Tex. Admin. Code § 535.156(a), (b) (Tex. Real Estate Comm'n, Dishonesty; Bad Faith; Untrustworthiness).[3]

In complaining of findings 21, 39, 41, and that portion of 40 that relates to Zamora, Garcia contends that Zamora's initials and acknowledgment of a form entitled Information about Brokerage Services, which includes the phrase "if the Broker acts as an intermediary," constitutes consent to Garcia's serving as an intermediary. We do not find this argument persuasive. Harris testified that the Information about Brokerage Services form is an information document created to explain brokerage services and is not to be used as a disclosure form or a representation agreement. Further, even if we were to construe Zamora's initials on the form as written consent, the consent had to specify how Garcia was to be paid, which the information form did not do. *See* Tex. Occ. Code § 1101.559(a)(2). More importantly, the Buyer Representation Agreement between Garcia and Zamora—which Zamora signed the same day as the Information about Brokerage Services

---

[3] All citations to Title 22 of the Texas Administrative Code are to rules promulgated by the Texas Real Estate Commission.

14

form—expressly denied Garcia intermediary status. Thus, as Garcia describes it, Zamora both denied and authorized his status as an intermediary on the same day.

Further, Garcia testified that he first met Zamora at Moreno's property and that he checked the "No Intermediary Status" box on her Buyer Representation Agreement because she stated that she did not want to buy the property. Harris testified that under section 1101.559(a)(2), any change to the original denial of intermediary status would have had to be in writing. There is no evidence Garcia revised the agreement as to the intermediary status provision or otherwise obtained Zamora's written consent once she became interested in the property. Neither of the two amendments to the agreement offered into evidence made any reference to a change to Garcia's intermediary status. Although Garcia testified that he provided Zamora a notice of his intermediary status and obtained her signature, he was unable to produce it. The Commission determines the meaning, weight, and credibility to assign conflicting evidence, and we may not set aside its decision because evidence was conflicting or disputed. *See Sanchez*, 229 S.W.3d at 511. We conclude that findings of fact numbers 21, 38, 41, and 40 as they relate to Zamora are supported by substantial evidence. *See CenterPoint Energy*, 324 S.W.3d at 105 n.60.

As for finding 38 and finding 40 as it relates to Moreno, Garcia relies on the fact that in the listing agreement, the "Intermediary Status" box was checked, authorizing Garcia to act as intermediary *if* a prospective buyer that Garcia represented offered to buy the property. However, the copy of the listing agreement introduced into evidence did not contain Moreno's signature or his initials next to the intermediary status provision or on the page on which it was located. Further, even assuming Moreno signed the listing agreement, the intermediary status provision also required

15

Garcia to notify Moreno that he *would* be acting as an intermediary and which of several alternative approaches he would take. Garcia testified that he provided Moreno with a notice of intermediary form and obtained his signature on it but was unable to produce it. He did not testify that he advised him as to which approach he would take. In any event, Garcia does not argue on appeal that he provided Moreno the required notice, and there is no evidence that he did.

In addition, Moreno's complaint describes the transaction in detail and states that Garcia presented him with a contract with Zamora but does not mention Garcia's acting as an intermediary. In addition, Moreno's complaint states that it was after he refused to close on the transaction on February 1, 2008, that he learned from Zamora that she had paid sums of money to Garcia. Likewise, Zamora stated in her complaint that when she informed Moreno on February 4, 2008, of the sums she had paid Garcia, Moreno was "shocked." Based on this evidence, it is a reasonable inference that Garcia did not provide Moreno the required notice that he was acting as an intermediary between Moreno and Zamora. *See id.* We conclude that there is more than a scintilla of evidence to support finding of fact number 38 and finding number 40 as they relate to Moreno.[4] *See Mireles*, 9 S.W.3d at 131.

Garcia argues that finding of fact number 29 is not supported by the evidence. Finding number 29 is that Zamora signed a second amendment to her Buyer Representation

---

[4] As to findings 39, 40, and 41, Garcia also argues that "the applicable statutes have not been properly applied to [Garcia]," and he "incorporates by reference [his] Brief on Issue of Fiduciary Duty previously filed with the Court." No such brief has been filed with this Court. Although the PFD reflects that the administrative record was to remain open for approximately three weeks following the hearing so that the parties could file briefs on the issue of fiduciary duty, the appellate record does not contain any such briefs, and Garcia has waived this argument. *See* Tex. R. App. P. 38.1(i).

16

Agreement that increased Garcia's commission to 6% and required Zamora to pay "an additional $2,500."[5]  Garcia does not complain that the evidence does not support the finding that Zamora paid $2,500, only that it should not have been referred to as "additional."  Garcia argues that because the first amendment to the agreement required Zamora to pay a nonrefundable retainer of $2,500 and Zamora did not pay it, it was included again in the second amendment.  Thus, Garcia contends, there is no evidence in the record to support the reference to "additional" payment.  However, the Commission made no conclusions of law concerning the amount of commission Garcia charged, and none of the Commission's conclusions of law is based on the word "additional."  Therefore, Garcia's substantial rights were not prejudiced by the Commission's use of the word.  *See* Tex. Gov't Code § 2001.174(2); *Bray*, 243 S.W.3d at 693–94; *Ford Motor Co.*, 21 S.W.3d at 766–67.  Garcia also argues that because the Commission does not regulate the amount of commission a real estate salesperson may charge, finding of fact number 29 was immaterial to the Commission's determination and should not have been included.  However, as noted, the Commission made no conclusion of law that Garcia charged commission in an improper amount.  Rather, the finding goes to the fact that Zamora made payments to Garcia, not to the amount, and supports in part conclusion of law number 6 that Garcia received compensation from both parties without their consent in violation of section 1101.652(b)(8).  *See* Tex. Occ. Code § 1101.652(b)(8).

Garcia next challenges finding of fact number 33—that Moreno refused to close on the sale because Garcia had charged him more than agreed in the listing agreement.  Garcia contends

---

[5]  When Zamora was unable to close by the agreed date on two occasions, Garcia drafted amendments to her Buyer Representation Agreement modifying the terms.

17

the finding is not supported by the evidence. Initially, we observe that this finding includes a statement of Moreno's state of mind. In his complaint, Moreno stated that he refused to close because the documents reflected a higher commission than stated in the listing agreement, and Garcia does not appear to challenge that portion of finding 33. Rather, he focuses on the underlying finding that he charged more commission than stated in the listing agreement. Garcia cites the listing agreement provision that the commission was to be 5% of the sales price or 4% if Garcia was the only agent and Moreno signed a Buyer Representation Agreement. Because Moreno chose not to work with him and did not sign another agreement, Garcia argues, the commission earned was 5%. However, we have already concluded that there was substantial evidence to support finding of fact number 17 that the special provision requiring the "client" to sign a Buyer Representation Agreement was ambiguous, and if it were construed to mean that Zamora had to sign a Buyer Representation Agreement, the commission charged to Moreno should have been 4%. Therefore, there is more than a scintilla of evidence to support finding of fact number 33. *See Mireles*, 9 S.W.3d at 131.

Garcia also argues that finding of fact 34 is not supported by the evidence. Finding 34 states that because Garcia failed to keep the contract, receipts, and records of Zamora's payments to him, the record was unclear as to how much Zamora paid Garcia, but it was at least $8,070. Garcia contends that he produced the contracts, receipts, and records of payments at the hearing. However, it is undisputed that Garcia was unable to produce a copy of the contract for sale between Moreno and Zamora.[6] The record reflects that Garcia produced a Receipt of Buyer Retainer for

_____

[6] The record also reflects that (1) the copy of Zamora's nonrefundable retainer agreement admitted into evidence did not contain her signature although her name was printed on the agreement on the signature line; (2) as discussed above, Garcia was unable to produce any documentation that

Zamora's first payment of $4,000, and that the second amendment to the agreement contained a handwritten notation for receipt of an additional $4,000. However, the notation did not indicate what the second $4,000 payment was for, and Garcia testified that he gave $1,400 of that payment to Moreno as Zamora's rent payment.[7] Garcia produced no evidence of any other payments made by Zamora under the amendments to the Buyer Representation Agreement.[8] As for the amount stated in finding 34, Garcia testified that Zamora paid him $8,070, and the settlement statement dated February 1, 2008, credited $8,070 to Zamora as her nonrefundable retainer—although Garcia's testimony was less than clear concerning what additional amounts Zamora paid to him to reach that total. We conclude that there is substantial evidence to support finding of fact number 34. *See CenterPoint Energy*, 324 S.W.3d at 105 n.60.

As with findings of fact numbers 18 and 29, Garcia also argues that because the Commission does not regulate the amount of commission a real estate salesperson may charge, finding of fact number 34 was immaterial to the Commission's determination and should not have been included. However, as previously discussed, the Commission made no conclusion of law that Garcia charged commission in an improper amount. Rather, finding 34 goes to Garcia's failure to maintain and produce accurate records, not to the amount of his commission, and supports in part

---

Zamora had consented to his acting as an intermediary or any evidence that he had notified Moreno that he was acting as intermediary as required by the intermediary status provision; and (3) as previously discussed, the only copy of the listing agreement admitted into evidence did not contain Moreno's signature.

[7] When Zamora was unable to close by the original agreed date, she and Moreno agreed to a temporary lease.

[8] Zamora stated in her complaint that she paid Garcia a total of $16,600.

19

conclusion of law number 4 that Garcia acted negligently or incompetently in violation of section 1101.652(b)(1). *See* Tex. Occ. Code § 1101.652(b)(1).

Next, Garcia challenges finding of fact number 35, which states that Garcia did not refund any of the money Zamora paid him. Garcia contends finding 35 is irrelevant to the Commission's determination because the Commission does not regulate the amount of commission a real estate salesperson may charge and because there is no agreement or legal requirement that Garcia refund all or part of the nonrefundable retainer. Again, the Commission made no conclusion of law that Garcia charged commission in an improper amount. Nor is there a conclusion of law specifically concluding that Garcia breached any agreement or violated any statute or rule based on his failure to refund money to Zamora. Finding number 35, instead, supports in part conclusion of law number 10, which states the substance of section 1101.702(b), listing factors to consider in determining the amount of an administrative penalty. *See id.* § 1101.702(b). Garcia does not challenge conclusion of law number 10, and whether a refund was made is relevant to the determination of the amount of administrative penalty assessed for the violations found. *See id.* (including license holder's efforts to correct violation as factor to consider in determining amount of penalty).

Finding of fact number 36 states that Garcia's repeated failure to disclose his sponsoring broker's license number and use of his license number instead on transaction documents was dishonest to his clients and to the public. Garcia contends finding number 36 is not supported by the evidence. He points to evidence that he used the name Realty Geeks as the broker's name and maintains that he used his license number because he was the designated realtor for the transaction.

20

He argues that the reference to Realty Geeks as the broker indicates affiliation with the sponsored broker and that both his clients had access to the brokerage information through his license number. He also argues that his conduct was consistent with industry standards and that there is no evidence that anyone relied on his signature on the documents. However, Harris testified that a salesperson may not work independently of a sponsoring broker.[9] She explained that the Commission-promulgated forms contain spaces for the broker's name and license number, with a space below for the salesperson's name but not his license number, and a salesperson may not use his own license number on a contract in the space for the broker's license number. She stated her opinion that it is inaccurate to do so and that it is dishonest to convey to members of the public, such as mortgage companies, attorney's closing offices, and title companies who receive and review the documents, that the license number listed is that of a broker. *See id.* § 1101.652(b)(2) (Commission may suspend license if licensee engages in dishonest conduct); 22 Tex. Admin. Code § 535.156(d) (license holder has duty to convey accurate information to members of public). Harris also stated that a salesperson's use of his license number is misleading or at least negligent because a licensed realtor should know this basic requirement. *See* Tex. Occ. Code § 1101.652(b)(1). We conclude that there is substantial evidence to support finding of fact number 36.

Garcia also argues that findings of fact numbers 43 and 44 are "vague and unsupported by the evidence." Finding number 43 is that Garcia made no effort to be accountable for or to correct "these violations." Garcia contends that it is unclear what violations finding number

---

[9] Section 1101.351(c) provides that a licensed salesperson may not act as such unless he is associated with a licensed broker. *See* Tex. Occ. Code § 1101.351(c).

43 refers to. However, read in context, it is evident that "these violations" refers to the conduct outlined in the previous findings of fact, including, for example, findings numbers 40 and 41 that Garcia breached his fiduciary duties to Moreno and Zamora. Finding number 44 states that assessment of a $17,000 administrative penalty would reflect the seriousness of the violations and deter future violations. Garcia contends that nothing in the PFD or the record indicates any guidelines to justify the apparently arbitrary penalty. Yet conclusion of law number 9 cites the statutory authority for assessment of an administrative penalty of up to $5,000 per violation per day. *See id.* § 1101.702(a). Likewise, conclusion of law number 10 sets out the factors to be considered in determining the amount of an administrative penalty, as set out in section 1101.702, including the seriousness of the violation and any efforts to correct the violation. *See id.* § 1101.702(b)(1), (4). The ALJ also set out specific amounts for each of the violations found. Section 1101.702 provides for the Commission's adoption of a schedule of administrative penalties based on the criteria listed in subsection (b). *See id.* § 1101.702(c); *see also* 22 Tex. Admin. Code § 535.191 (Schedule of Administrative Penalties) (providing for range of penalties). Having concluded that the findings preceding finding 43 are supported by substantial evidence, accepting as established the unchallenged findings, and considering the discretion afforded the Commission in determining the amount of penalty within an authorized range, we further conclude that findings 43 and 44 are not improperly vague and are supported by the evidence. *See CenterPoint Energy*, 324 S.W.3d at 105 n.60; *Madden v. State Bd. for Educator Certification*, No. 03-11-00584-CV, 2014 Tex. App. LEXIS 5444, at *12 n.4 (Tex. App.—Austin May 22, 2014, pet. denied) (mem. op.) (citing *Helbing v. Texas Dep't of Water Res.*, 713 S.W.2d 134, 137 (Tex. App.—Austin 1986, no

writ) (accepting as established unchallenged findings in agency's final order)). We overrule Garcia's second issue.

**Challenges to Conclusions of Law**

In his third issue, Garcia challenges specific conclusions of law. First, he complains of conclusions of law numbers 4 through 8, which conclude that Garcia violated specified provisions of the Occupations Code and Commission rules. These conclusions all begin with the phrase "[b]ased on the Findings of Fact . . . ." Garcia contends that they are vague as to what conduct the Commission determined violated the statutory and regulatory provisions because they do not specify which findings of fact form the basis of each conclusion. However, Garcia cites no statute or rule that requires the Commission to identify which specific findings of fact support each conclusion of law, and we know of none.

Garcia also argues that conclusions of law numbers 4 through 8 are not supported by the evidence. We do not find this argument persuasive. Conclusion number 4 states that Garcia violated section 1101.652(b)(1) by acting negligently or incompetently. Section 1101.652(b)(1) provides that the Commission may suspend a license if the holder acts negligently or incompetently. *See* Tex. Occ. Code § 1101.652(b)(1). Conclusion of law number 4 is supported by unchallenged findings of fact numbers 13, 16, and 22, as well as by findings 10, 17, 21, 34, 40, and 41, which we have concluded are supported by substantial evidence. These findings include that Garcia could not produce certain requested documents, including a copy of the listing agreement signed by Moreno; improperly used his license number rather than that of his sponsoring broker; drafted an ambiguous special provision; failed to obtain Zamora's consent to act as an intermediary; and failed to disclose

23

to Moreno and Zamora that he was acting as an intermediary. In addition, Harris testified that a licensee's drafting a contract with ambiguous terms and using the Information about Brokerage Services form as a disclosure form or representation agreement both constitute negligence or incompetence in violation of section 1101.652(b)(1).

Conclusion number 5 concludes that Garcia violated section 1101.652(b)(2) by engaging in conduct that is dishonest, in bad faith, or that demonstrates untrustworthiness. Section 1101.652(b)(2) provides that the Commission may suspend a license if the holder engages in conduct that is dishonest or in bad faith or that demonstrates untrustworthiness. *See id.* § 1101.652(b)(2). Conclusion of law number 5 is supported by unchallenged findings of fact numbers 13, 16, 22, 31, and 32, as well as by findings 10, 17, 21, 33, 36, 38, 39, 40, and 41, which we have determined are supported by substantial evidence. The Commission's determinations in these findings include that Moreno's signature is not on the listing agreement and that Garcia drafted an ambiguous special provision; failed to disclose his intermediary status to Moreno and Zamora, in particular failing even to obtain Zamora's consent to act as an intermediary; used his license number as if he were the broker; and failed to make clear who was paying him and in what amounts. In addition, Harris testified that a licensee who drafts a contract with ambiguous terms violates section 1101.652(b)(2). And the record reflects that the listing agreement states a price of $125,000, but Garcia allowed Zamora to offer $127,000, as reflected in the settlement statements.[10]

_____

[10] Two settlement statements were admitted into evidence. When the transaction did not close by the agreed date, a revised settlement statement was prepared.

In conclusion of law number 6, the Commission determined that Garcia violated section 1101.652(b)(8) by receiving compensation from both the buyer and the seller without their consent. Section 1101.652(b)(8) provides that the Commission may suspend a license of the holder who receives compensation from more than one party without the full knowledge and consent of all parties. *See id.* § 1101.652(b)(8). Conclusion number 6 is supported by unchallenged findings of fact numbers 23, 26, 31, and 32, as well as by findings 29, 33, 38, 39, 40 and 41, which we have concluded are supported by substantial evidence. These findings include that Garcia drafted documents reflecting that both Moreno and Garcia were to pay him; that Moreno did pay him; and that Garcia failed to disclose that he was representing both parties. As noted above, the evidence also showed that Moreno stated in his complaint that he learned Zamora had paid money to Garcia after he refused to close on the transaction on February 1, 2008, and Zamora stated in her complaint that Moreno was "shocked" when she told him on February 4, 2008, of the money she had paid Garcia. The evidence also shows that Zamora's Buyer Representation Agreement did not disclose Garcia's compensation agreement with Moreno. Although Garcia testified that he told Moreno and Zamora that he was receiving compensation from both, we defer to the Commission's determination when evidence is conflicting or disputed. *See Sanchez*, 229 S.W.3d at 511. Further, Harris testified that parties need to know what compensation the broker is receiving when they enter their contracts with the broker so that they can engage in informed negotiation, and if neither the buyer nor the seller is made aware of compensation being paid by the other, that is a violation of section 1101.652(b)(8).

25

Conclusion of law number 7 is that Garcia violated section 1101.559(a)(1) and (c) by acting as an intermediary without the written consent of both parties and by failing to act fairly and impartially for both parties. Section 1101.559(a) provides that a broker may act as an intermediary if he obtains written consent from each party. *See* Tex. Occ. Code § 1101.559(a)(1). Section 1101.559(c) provides that an intermediary shall act fairly and impartially. *See id.* § 1101.559(c). Conclusion number 7 is supported by unchallenged findings of fact numbers 14 and 20, as well as findings 21, 38, 39, 40, and 41, which we have concluded are supported by substantial evidence. These findings include that Garcia failed to obtain Zamora's consent to act as an intermediary; to notify Moreno that he was acting as an intermediary; and to disclose he was representing both parties. In addition, Harris testified that failing to disclose that the broker is receiving compensation from both parties violates section 1101.559(c).

Conclusion of law number 8 states that Garcia violated Commission rule 535.156(d) by failing to provide the public with accurate information regarding his sponsoring broker. Rule 533.156(d) provides that a license holder has a duty to convey accurate information to members of the public with whom he deals. *See* 22 Tex. Admin. Code § 535.156(d). Conclusion 8 is supported by unchallenged finding 22 and finding 36, which we have determined are supported by substantial evidence. These findings show that Garcia had a pattern of improperly substituting his license number for that of his sponsoring broker, which Harris testified is inaccurate.[11]

---

[11] Garcia also contends in a single sentence as to each challenged conclusion of law that "the cited statute has been improperly applied to [him]." However, he offers no argument or citation to authorities or to the record and has therefore waived this argument. *See* Tex. R. App. P. 38.1(i).

26

We conclude that conclusions of law numbers 4 through 8 are supported by substantial evidence. *See Froemming*, 380 S.W.3d at 790–91, 794; *Pierce*, 212 S.W.3d at 751. Accordingly, we overrule Garcia's third issue.

## CONCLUSION

We conclude that the Board failed to comply with section 2001.058(e) of the APA in modifying the ALJ's recommended sanction to include a two-year suspension. Accordingly, we reverse and remand to the Board for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed in Part; Reversed and Remanded in Part

Filed: May 27, 2016